**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, | ) |
| LLC, *et al.*[1] | ) Case No. 17-12560 (KJC) |
| | ) |
| Debtors and Debtors In Possession. | ) (Jointly Administered) |
| | ) |
| LISE DE LA ROCHELLE, PROVIDENT TRUST | ) |
| GROUP, LLC FBO ARNOLD L. BERMAN IRA, | ) |
| STEPHEN and ZOILA THOMPSON, | ) |
| THE BERNARD & SYLVIA FINEBERG | ) |
| LIVING TRUST, BETTY FOSTER, RUTH E. | ) |
| SCOTT, EDNA M. WATTERS, IRENE OLIN | ) |
| TRUST DTD 02/25/1998, KURT FAUDEL, | ) |
| C. SPENCER and VIRGINIA VAN GULICK, | ) |
| PROVIDENT TRUST GROUP, LLC FBO | ) |
| NANCY E. KICHERER IRA, DONALD A. and | ) |
| FLORENCE H. BOTTARO, LAURENCE | ) |
| POPOLIZIO, MICHAEL L. GROSS, AND | ) |
| JONATHAN W. GREENLEAF and BARBARA K. | ) |
| GREENLEAF AS TRUSTEES OF THE | ) |
| GREENLEAF FAMILY TRUST | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary Proceeding |
| | ) No. 18-_____(KJC) |
| WOODBRIDGE GROUP OF COMPANIES, | ) |
| LLC, *et al*. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT THAT PLAINTIFFS ARE
SECURED CREDITORS OF THE DEBTORS WITH A VALID, PERFECTED,
FIRST PRIORITY LIEN IN CERTAIN REAL PROPERTY,
<u>AND/OR PROCEEDS FROM SALE OF CERTAIN REAL PROPERTY</u>**

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14225 Ventura Boulevard #100, Sherman Oaks California 91423. The Debtors' cases are being jointly administered pursuant to Bankruptcy Court Order, dated December 5, 2017 (ECF Docket No. 45). The complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent, Garden City Group, LLC, at www.gardencitygroup.com/cases/wgc.

{00022670. }

Plaintiffs, LISE DE LA ROCHELLE, PROVIDENT TRUST GROUP, LLC FBO ARNOLD L. BERMAN IRA, STEPHEN and ZOILA THOMPSON, THE BERNARD & SYLVIA FINEBERG LIVING TRUST, BETTY FOSTER, RUTH E. SCOTT, EDNA M. WATTERS, IRENE OLIN TRUST DTD 02/25/1998, KURT FAUDEL, C. SPENCER and VIRGINIA VAN GULICK, PROVIDENT TRUST GROUP, LLC FBO NANCY E. KICHERER IRA, DONALD A. and FLORENCE H. BOTTARO, LAURENCE POPOLIZIO, MICHAEL L. GROSS, and JONATHAN W. GREENLEAF and BARBARA K. GREENLEAF AS TRUSTEES OF THE GREENLEAF FAMILY TRUST, by and through their undersigned counsel, file this complaint (the "Complaint") against WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.* (the "Debtors").  In support thereof, the Plaintiffs allege as follows:

## INTRODUCTION

1.　　This adversary proceeding is brought pursuant to 28 U.S.C. § 2201, and Federal Rule of Bankruptcy Procedure 7001(2) and 7001(9), seeking a declaratory judgment that the Plaintiffs hold: (i) pre-petition valid, perfected, first priority liens against that certain real property of the Debtors; or, alternatively, (ii) pre-petition valid, perfected, first priority liens against any and all proceeds from the sale and/or liquidation of that certain real property of the Debtors; (iii) or, alternatively, (iii) a constructive trust and/or equitable liens against that certain real property of the Debtors, and/or any and all proceeds from the sale and/or liquidation of that certain real property of the Debtors.

## PARTIES

2.　　Plaintiff Lise De La Rochelle maintains her residence in Fort Lauderdale, Florida.

3.　　Upon information and belief, Plaintiff Provident Trust Group, LLC FBO Arnold L. Berman is an entity organized under California law, with a principal address of Ontario,

California.

4. Plaintiffs Stephen and Zoila Thompson maintain their residence in Sebastian, Florida.

5. Upon information and belief, Plaintiff the Bernard & Sylvia Fineberg Living Trust is an entity organized under Florida law, with a principal address of Boynton Beach, Florida.

6. Plaintiff Betty Foster maintains her residence in Fort Pierce, Florida.

7. Plaintiff Ruth E. Scott maintains her residence in Vero Beach, Florida.

8. Plaintiff Edna M. Watters maintains her residence in Vero Beach, Florida.

9. Upon information and belief, Plaintiff Irene Olin Trust DTD 02/25/1998 is an entity organized under Florida law, with a principal address of Fort Pierce, Florida.

10. Plaintiff Kurt Faudel maintains his residence in Coconut Creek, Florida.

11. Plaintiffs C. Spencer & Virginia Van Gulick maintain their residence in Stuart, Florida.

12. Upon information and belief, Plaintiff Provident Trust Group, LLC FBO Nancy E. Kicherer IRA is an entity organized under California law, with a principal address of Ontario, California.

13. Plaintiff Donald A. and Florence H. Bottaro maintain their residence in Palm Beach Gardens, Florida.

14. Plaintiff Laurence Popolizio maintains his residence in Vero Beach, Florida.

15. Plaintiff Michael L. Gross maintains his residence in Vero Beach, Florida.

16. Upon information and belief, Plaintiff Jonathan W. and Barbara K. Greenleaf as Trustees of the Greenleaf Family Trust is an entity organized under California law, with a

principal address of Santa Barbara, California.

17. Woodbridge Group of Companies, LLC, *et al.*, are a debtor and debtor in possession in the above-captioned Chapter 11 cases, and are Delaware limited liability companies, with their principal place of business in Los Angeles, Sherman Oaks, California.

18. On December 4, 2017 (the "Petition Date") each of the Debtors filed a voluntary petition for relief in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## JURISDICTION AND VENUE

19. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 105 and 506, 28 U.S.C. § 2201, the Declaratory Judgments Act, and Federal Rule of Bankruptcy Procedure 7001(2) and 7001(9).

20. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

21. This matter is a core proceeding as that term is defined in 28 U.S.C. §§ 157(b)(2)(A), (K), and (O).

22. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

23. In accordance with Rule 7008-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, the Plaintiffs hereby consent to entry of final orders on judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## RELEVANT BACKGROUND

**A.     The Debtors' Organizational Structure and Operation**

24.     Prior to the commencement of the Debtors' bankruptcy proceedings, the Debtors bought, improved and sold high-end, luxury homes, as well as owned and operated full-service real estate brokerages, a private investment company, and real estate lending operations.

25.     In the ordinary course of their business, the Debtors both: (a) purchased and improved existing homes, and (b) purchased undeveloped land and built new homes thereon.

26.     The Debtors conducted their businesses through a network of affiliated companies that own the various assets comprising its businesses.

27.     The Debtors' ultimate parent is RS Protection Trust.

28.     WMF Management, LLC ("WMF Management") is a wholly owned subsidiary of RS Protection Trust.

29.     WMF Management is a debtor before this Court.

30.     WMF Management operated the retail fundraising aspect of the Debtors' business.

31.     WMF Management directly owns seven investment fund entities (the "Funds").

32.     The Funds are debtors before this Court.

33.     The business purpose of the Funds was to solicit and raise money from the members of the general public to fund the Debtors' real estate and investment operations. The Funds also serviced the debt they raised by collecting loan proceeds from the property owners and paying noteholders.

34.     The members of the public included, but were not limited to, individual noteholders, couples, trusts, and small businesses.

35.     In a typical transaction, a noteholder would loan a fixed amount to a Fund pursuant to a loan agreement for the stated purpose of enabling the Fund to lend money to a third-party borrower.

36.     The Fund would contemporaneously enter into a promissory note with the noteholder evidencing the Fund's financial obligation to the noteholder.

37.     The third-party borrower contemplated by the loan agreement was either a mezzanine holding company ("MezzCo") owned by the Debtors' parent company, or a single property real estate company ("PropCo") owned by a MezzCo.

38.     The Fund would solicit several noteholders for funds to facilitate the third-party borrower's purchase of a parcel of real property.

39.     The MezzCo or PropCo would utilize the money from the Fund to purchase, or construct upon, an individual real property.

40.     The loan from the Fund to the MezzCo or PropCo would be collateralized by liens by the real property, and a pledge of the MezzCo's ownership interest in the PropCo.

41.     The loan agreement stated that the noteholder's loan would be secured by a security interest in the Fund's present and future right, title and interest in and to: (i) the loan from the Fund to the third-party borrower; (ii) the promissory note evidencing that loan; (iii) the mortgage or deed of trust securing that loan; and (iv) insurance policies in connection with the loan.

42.     In connection therewith, the Fund would execute: (i) an assignment to the noteholder of the Fund's right, title, and interest in the promissory note reflecting the loan, and the related mortgage or deed of trust in connection with the real property; and (ii) a collateral assignment, pursuant to which the Fund assigned to the noteholder the Fund's right, title, and

interest in and to the same underlying documents, proceeds, and rights thereunder.

43. Upon information and belief, the original documents evidencing these transactions were not retained by the noteholder, and remained in the applicable Fund's and/or the Debtors' possession at all times.

44. The purpose of these transactions was to solicit and raise funds from the public in order to enable the Debtors to purchase, and subsequently sell, the real properties at a profit for the benefit of the Debtors.

45. The proceeds from the sale of the real property would be disbursed by the applicable PropCo or MezzCo to the Fund, which in turn would use the proceeds to repay the lenders, among other things.

46. The Debtors estimate that the Funds, and thereby the Debtors, received approximately Seven Hundred and Fifty Million Dollars ($750,000,000) in loans from approximately 9,000 noteholders.

47. One of the Funds is Woodbridge Mortgage Investment Fund 3A, LLC ("WMIF 3A").

48. WMIF 3A is a debtor before this Court.

49. WMIF 3A was the largest of the Funds in so far as it received over Two Hundred and Forty Eight Million Dollars ($248,000,000) from approximately 2,822 noteholders.

50. WMIF 3A was in the business of exchanging with members of the public promissory notes collateralized by liens on real properties acquired by a PropCo.

51. WMIF 3A was in the business of making agreements with members of the public for the collection of payments and/or for the performance of services in connection with promissory notes collateralized by liens on real properties acquired by PropCos.

52. Upon information and belief, in the course of WMIF 3A's practices, WMIF 3A exchanged with the public eight or more real property promissory notes secured or collateralized by liens on real property in a calendar year.

53. The Plaintiffs were noteholders with WMIF 3A.

**B.     Plaintiffs' Loans to the Funds**

54. The Plaintiffs were solicited by the Funds to invest money.

55. The Plaintiffs were noteholders with WMIF 3A in connection with the real property located at 141 South Carolwood Drive, Holmby Hills, California (the "Owlwood Estate").

56. Upon information and belief, the Plaintiffs entered into written loan agreements with WMIF 3A prior to lending funds to WMIF 3A (the "Owlwood Loan Agreements"). An example of the Owlwood Loan Agreements is attached to this Complaint as Exhibit 1.

57. Upon information and belief, pursuant to the Owlwood Loan Agreements, the Plaintiffs lent WMIF 3A funds for the stated purpose of funding a secured loan from WMIF 3A to a "third-party borrower" (the "Owlwood Loans").

58. Upon information and belief, the "third-party borrower" was Sturmer Pippen Investments, LLC ("Sturmer Pippen").

59. Upon information and belief, Sturmer Pippen is the PropCo that owns the Owlwood Estate.

60. Sturmer Pippen is a debtor before this Court.

61. Under the terms of the Owlwood Loan Agreements, the Plaintiffs were granted a "security interest in all of [WMIF 3A's] present and future right, title and interest in and to any and all of the following":

>   (a) That certain loan in the principal amount of Sixty-Three Million and 00/100 Dollars ($63,000,000.00) (the "<u>Pledged Loan</u>") extended or to be extended to Sturmer Pippin Investments, LLC (the "<u>Borrower</u>") secured by a first priority lien on the real property located at 141 South Carolwood Drive, Holmby Hills, California (the "<u>Premises</u>");
>
>   (b) The promissory note evidencing the Pledged Loan (the "<u>Underlying Note</u>");
>
>   (c) The mortgage or deed of trust securing the Pledged Loan with an interest in the Premises (the "<u>Underlying Mortgage</u>"); and
>
>   (d) Title insurance policies and such other instruments or documentation as may be executed and delivered to Woodbridge in conjunction with the Pledged Loan (said Underlying Note, Underlying Mortgage and other associated loan documents collectively hereafter referred to as the "<u>Loan Documents</u>."

The Owlwood Loan Agreements, Paragraph 2.

62. The Funds also serviced the debt they raised by collecting loan proceeds from the property owners and paying the Plaintiffs-noteholders.

63. Upon information and belief, WMIF 3A collected the amounts due under notes and serviced the promissory notes.

64. Paragraph 2(f) of the Owlwood Loan Agreements states that "Woodbridge retains the right to execute other notes, loan agreements, assignments, and collateral assignments in favor of other lenders as may be necessary to fund the Pledged Loan secured by the Collateral [as defined in the Owlwood Loan Agreement] on a <u>pari passu</u> basis with such other lenders." (Underline in original).

65. Upon information and belief, in exchange for the Owlwood Loans, WMIF 3A executed promissory notes in favor of the Plaintiffs (the "Owlwood Notes") evidencing WMIF 3A's financial obligation to the Plaintiffs pursuant to the Owlwood Loan Agreements. An example of the Owlwood Lender Notes is attached to this Complaint as Exhibit 2.

66. Paragraph 14 of the Owlwood Lender Notes provides that the Owlwood Lenders Notes were secured by the "Collateral Assignment Documents", defined therein as the "Note, the Loan Agreement of even date herewith between [WMIF 3A] and [Plaintiffs] … [and] all other instruments executed or to be executed in connection therewith."

67. Upon information and belief, WMIF 3A executed other notes, loan agreements, assignments, and collateral assignments as contemplated in the Owlwood Loan Agreements.

68. Upon information and belief, pursuant to the terms of the Owlwood Loan Agreements and the Owlwood Lender Notes, WMIF 3A executed an "Assignment of Promissory Note and Mortgage" and "Collateral Assignment of Note, Mortgage, and Other Loan Documents" (collectively, the "Collateral Assignment"). An example of the Collateral Assignment documents are attached as part of Exhibit 1.

69. As stated in the Collateral Assignment, a condition of the Owlwood Loans was that WMIF 3A would assign to the Plaintiffs, as additional security for the Owlwood Loan, all of WMIF 3A's right, title and interest in and to the Deed of Trust, the promissory note secured by the deed of trust, and all rights to receive payments as set forth in the Collateral Assignment.

70. Upon information and belief, WMIF 3A, by and through the Collateral Assignment intended, and did exchange to the Plaintiffs, WMIF 3A's interest in the real property contract between WMIF 3A and Sturmer Pippen for the Owlwood Estate, and WMIF 3A performed services in connection therewith.

71. Upon information and belief, WMIF 3A, by and through the Collateral Assignment, exchanged to the Plaintiffs, the promissory note secured by Sturmer Pippen's lien on the Owlwood Estate, and WMIF 3A performed services in connection therewith.

**C.     The Plaintiffs Are Secured Against the Real Property**

72.     Upon information and belief, the Plaintiffs were solicited and enticed to effectuate the Owlwood Loans on the understanding that WMIF 3A would record the collateral assignment in order to protect the Plaintiffs in the event of WMIF 3A's default on the repayment of the Owlwood Loans.

73.     Upon information and belief, WMIF 3A represented to the Plaintiffs that by recording the Collateral Assignment, the Owlwood Loans would be secured against the Owlwood Estate.

74.     Upon information and belief, WMIF 3A informed the Plaintiffs that they would hold first position liens on the Owlwood Estate, which was valued higher than the outstanding indebtedness.

75.     In connection therewith, WMIF 3A was in possession of the original documents, and was acted as custodian of the records on behalf of the Plaintiffs, in addition to the other noteholders solicited by WMIF 3A for the financing of the Owlwood Estate.

76.     Upon information and belief, WMIF 3A recorded the Collateral Assignment against the Owlwood Estate with the Los Angeles County Registrar-Record/County Clerk.

77.     Pursuant to the California Code of Business and Professions, WMIF 3A acted as a "broker" in connection with its actions to solicit the Owlwood Loans, service the Owlwood Loans, remit payments from Sturmer Pippen to the Plaintiffs, and record and collateralize the Owlwood Loans and Collateral Assignment against the Owlwood Estate.

78.     WMIF 3A's execution of the Owlwood Loan Agreements, the Owlwood Lender Notes, and the Collateral Assignment collectively evidence WMIF 3A's intent to divest itself of all right, title and interest in and to the Owlwood Estate and the proceeds of sale and/or

liquidation of the Owlwood Estate until it satisfied the Owlwood Loans.

79. At the time that WMIF 3A recorded the Collateral Assignment, it transferred all of its rights and interests in the Owlwood Estate to the Plaintiffs to collateralize the Owlwood Lender Notes.

80. Upon information and belief, by virtue of the recording of the Collateral Assignment against the Owlwood Estate, the Plaintiffs are the holders of first in priority, valid, and properly perfected security interest in the Owlwood Estate as well as the proceeds of such assets.

81. WMIF 3A failed to fully satisfy the Owlwood Loans prior to the commencement of the Debtors' bankruptcy proceeding before this Court.

82. The Debtors contend that despite the recording of the documents, the representations made by WMIF 3A and/or its representatives to the Plaintiffs, and the actions taken by WMIF 3A and/or the Debtors as discussed herein, the Owlwood Loans is not secured against the Owlwood Estate.

### COUNT I – DECLARATORY JUDGMENT ACTION
*THE PLAINTIFFS' PERFECTED SECURITY INTERESTS IN REAL PROPERTY*

83. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 82 above as though fully set forth herein.

84. Pursuant to 28 U.S.C. § 2201, the Declaratory Judgments Act, and Fed. R. Bankr. P. 7001(2) and 7001(9), the Plaintiffs seeks declaratory relief against the Debtors in order to determine the validity, priority, or extent of the Plaintiffs' liens or other interests in the Owlwood Estate.

85. An actual case or controversy has arisen and now exists between the Plaintiffs and the Debtors concerning the Plaintiffs' right, title and interest in the Owlwood Estate.

86. The harm to the Plaintiffs and the Debtors caused by the uncertainty over the Plaintiffs' and the Debtors' right, title and interest in the Owlwood Estate is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment.

87. The Plaintiffs and the Debtors have actual present, adverse and competing interest in the Owlwood Estate either in law or fact.

88. Such a declaration deals with a present, ascertainable state and set of facts, as alleged herein.

89. The declaration requested herein would settle the legal issues involved in the dispute between the Plaintiffs and Debtors, and would offer relief from uncertainty.

### COUNT II – DECLARATORY JUDGMENT ACTION
*THE PLAINTIFFS' PERFECTED SECURITY INTERESTS IN
PROCEEDS FROM SALE OF REAL PROPERTY*

90. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 89 above as though fully set forth herein.

91. Pursuant to 28 U.S.C. § 2201, the Declaratory Judgments Act, and Fed. R. Bankr. P. 7001(2) and 7001(9), the Plaintiffs seeks declaratory relief against the Debtors in order to determine the validity, priority, or extent of the Plaintiffs' liens or other interests in and to any and all proceeds from the sale and/or liquidation of the Owlwood Estate.

92. An actual case or controversy has arisen and now exists between the Plaintiffs and the Debtors concerning the Plaintiffs' right, title and interest in any and all proceeds derived from the sale and/or liquidation of the Owlwood Estate.

93. The harm to the Plaintiffs and the Debtors caused by the uncertainty over the Plaintiffs' and the Debtors' right, title and interest in and to the proceeds derived from the sale and/or liquidation of the Owlwood Estate is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment.

94. The Plaintiffs and the Debtors have actual present, adverse and competing interest in and to the proceeds derived from the sale and/or liquidation of the Owlwood Estate either in law or fact.

95. Such a declaration deals with a present, ascertainable state and set of facts, as alleged herein.

96. The declaration requested herein would settle the legal issues involved in the dispute between the Plaintiffs and Debtors, and would offer relief from uncertainty.

### COUNT III – CONSTRUCTIVE TRUST OR EQUITABLE LIEN
*THE PLAINTIFFS' CONSTRUCTIVE TRUST OR
EQUITABLE LIEN AGAINST REAL PROPERTY*

97. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 96 above as though fully set forth herein.

98. The Plaintiffs have a first-in-priority, valid security interests in the Owlwood Estate, and/or the proceeds derived from the sale and/or liquidation of same pursuant to the doctrine of constructive trust.

99. The Plaintiffs have a first-in-priority, valid security interests in the Owlwood Estate and/or the proceeds derived from the sale and/or liquidation of same pursuant to the doctrine of an equitable lien.

WHEREFORE, the Plaintiffs respectfully request that this Court enter a judgment in their favor as follows:

(a) Declaring that the Plaintiffs hold pre-petition, valid, perfected, first priority liens against the Owlwood Estate at some other time prior to the Petition Date;

(b) Alternatively, declaring that the Plaintiffs hold pre-petition, valid, perfected, first priority liens against proceeds derived from the sale and/or liquidation of

    the Owlwood Estate;

(c)     Alternatively, declaring that the Plaintiffs hold a constructive trust over the Owlwood Estate and/or the proceeds derived from the sale and/or liquidation of the Owlwood Estate;

(d)     Alternatively, declaring that the Plaintiffs hold an equitable lien against the Owlwood Estate and/or the proceeds derived from the sale and/or liquidation of the Owlwood Estate; and

(c)     Granting all other relief deemed just and proper.

Dated: March 27, 2018  
       Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*  
Frederick B. Rosner (DE No. 3995)  
Jason A. Gibson (DE No. 6091)  
824 North Market Street, Suite 810  
Wilmington, Delaware 19801  
Telephone: (302) 777-1111  
Email: rosner@teamrosner.com  
       gibson@teamrosner.com

Joseph E. Sarachek, Esq.  
THE SARACHEK LAW FIRM  
101 Park Avenue, 27th Floor  
New York, NY 10178  
Telephone: (212) 808-7881  
Facsimile: (646) 861-4950  
Email: joe@saracheklawfirm.com

Jorian Rose, Esq.  
Michael A. Sabella, Esq.  
Baker Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
Email: jrose@bakerlaw.com  
       msabella@bakerlaw.com

*Counsel for the Plaintiffs*