## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| LISE DE LA ROCHELLE, *et al.*,<br><br>          Plaintiffs,<br><br>      vs.<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,<br><br>          Defendants. | Adversary Proceeding<br>Case No. 18-50371 (KJC) |

## MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION
## TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT

---

[1]     The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................................1

II.    STATEMENT PURSUANT TO FRBP 7012 AND LOCAL RULE 7012-1 .....................3

III.    BACKGROUND ....................................................................................................4

IV.    APPLICABLE LEGAL STANDARD ..........................................................................6

V.    ARGUMENT.........................................................................................................6

    A.    Count I Must Be Dismissed Because the Plaintiffs Do Not Hold Any Liens in Real Property ...........................................................................6

    B.    Count II Must Be Dismissed Because the Plaintiffs Do Not Have Perfected Security Interests in the Proceeds of the Owlwood Property ...............11

        1.    The Plaintiffs Are Not Properly Perfected Under Article 9.......................11

        2.    The California Business & Professions Code Does Not Cure Plaintiffs' Failure to Perfect Under Article 9..............................................12

    C.    Count III Must Be Dismissed Because Plaintiffs Do Not Plausibly Allege a Constructive Trust Over or Equitable Lien in the Owlwood Property ...............17

        1.    The Plaintiffs Fail to State Plausible Claims Under Applicable Non-Bankruptcy Law...............................................................................17

            a.    The Constructive Trust Claim Fails as a Matter of State Law ...........................................................................................17

            b.    The Equitable Lien Claim Fails as a Matter of State Law............21

        2.    Bankruptcy Law Precludes Application of the Equitable Remedies Sought by Plaintiffs....................................................................................23

            a.    The Constructive Trust Claim is Not Viable in Bankruptcy..........23

            b.    The Equitable Lien Claim is Not Viable in Bankruptcy................26

CONCLUSION..............................................................................................................29

01:23331851.2

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advent Mgmt. Corp.*,
104 F.3d 293, 295 (9th Cir. 1997) ........................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................6, 16

*B.A.S.S. Group, LLC v. Coastal Supply Co.*,
2009 Del. Ch. LEXIS 166 (Del. Ch. June 19, 2009) .............................................19

*Bank of America, N.A. v. Gibson*,
102 A.3d 462 (Pa. Super. Ct. 2014) .......................................................................10

*Carpenters Health v. Mgmt. Res. Sys. Inc.*,
837 F.3d 378 (3d Cir. 2016) .........................................................................6

*Cent. Cal. Equip. Co. v. Dolk Tractor Co.*,
144 Cal. Rptr. 367 (Cal. App. 1978) ......................................................................13

*In re Charlton*,
389 B.R. 97 (Bankr. N.D. Cal. 2008) .............................................................26, 27

*Cnty. of Los Angeles v. Constr. Laborers Trust Funds for S. Cal. Admin. Co.*,
39 Cal. Rptr. 3d 917 (Ct. App. 2006) ....................................................................21

*Davies v. Krasna*,
535 P.2d 1161 (Cal. 1975) ......................................................................................18

*In re Einoder*,
55 B.R. 319, 328 (Bankr. N.D. Ill. 1985) ..............................................................27

*First Fidelity Thrift & Loan Ass'n v. Alliance Bank*,
71 Cal. Rptr. 2d 295 (1998) ...................................................................................26

*Fowler v. Fowler*,
39 Cal. Rptr. 101 (Ct. App. 1964) ..........................................................................18

*In re Grant Covert*,
658 F. App'x 175 (3d Cir. 2016) ............................................................................10

*Hogg v. Walker*,
622 A.2d 648 (Del. 1993) .......................................................................................18

*Holder v. Williams*,
    334 P.2d 291 (Cal. Ct. App. 1959) ........................................................................21

*Hopper v. Keys*,
    92 P. 1017 (Cal. 1907) ..........................................................................................7

*Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*,
    440 B.R. 624 (Bankr. D.N.J. 2010) ......................................................................10

*In re LDK Solar Sec. Litig.*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) ..........................................................6, 16

*Midlantic Nat'l Bank v. Bridge (In re Bridge)*,
    18 F.3d 195 (3d Cir. 1994) ..................................................................................26

*Mullins v. Burtch (In re Paul J. Paradise & Assocs.)*,
    249 B.R. 360 (D. Del. 2000)................................................................................25

*Myles v. United States*,
    416 F.3d 551 (7th Cir. 2005) ...............................................................................1

*Neilson v. Chang (In re First T.D. & Investment, Inc.)*,
    253 F.3d 520 (9th Cir. 2001) ...................................................................... *passim*

*Neilson v. Dwyer (In re Cedar Funding, Inc.)*,
    2011 Bankr. LEXIS 3487 (Bankr. N.D. Cal. Sept. 12, 2011) ...............................16

*Pell v. E.I. DuPont de Nemours & Co. Inc.*,
    539 F.3d 292 (3d Cir. 2008)...........................................................................21, 23

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)................................................................................4

*Pike v. Commodore Motel Corp.*,
    1986 Del. Ch. LEXIS 485 (Del. Ch. Nov. 14, 1986).............................................19

*In re Real Estate Assocs. P'ship Litig.*,
    223 F. Supp. 2d 1109 (C.D. Cal. 2002) ..........................................................18, 21

*In re Rettig*,
    32 B.R. 523 (Bankr. D. Del. 1983) ......................................................................28

*Rollins v. Neilson (In re Cedar Funding, Inc.)*,
    408 B.R. 299 (Bankr. N.D. Cal.) ....................................................................21, 23

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)..................................................................................4

*In re Silver Dollar, LLC*,
  388 B.R. 317 (Bankr. E.D. Tenn. 2008) ........................................................6, 16

*Singh v. Att'y Gen. of the United States*,
  677 F.3d 503 (3d Cir. 2012)......................................................................23, 24, 26

*Small v. Beverly Bank*,
  936 F.2d 945 (7th Cir. 1991) ....................................................................27

*Sywilok v. IRS (In re Gianninoto)*,
  539 B.R. 452 (Bankr. D.N.J. 2015) ..........................................................27

*In re Tleel*,
  876 F.2d 769 (9th Cir. 1989) ....................................................................25

*True Traditions, LC v. Wu*,
  552 B.R. 826 (N.D. Cal. 2015) .................................................................18

*Wallace v. Bonner (In re Bonner)*,
  2014 Bankr. LEXIS 896 (B.A.P. 9th Cir. Mar. 6, 2014) ...................25, 27

*Walsh v. Majors*,
  49 P.2d 598 (Cal. 1935) ............................................................................22

*Webster v. Lazin (In re Millennium Prods., Inc.)*,
  2002 Bankr. LEXIS 621 (Bankr. D.D.C. June 11, 2002) .........................27

*XL/Datacomp v. Wilson (In re Omegas Group, Inc.)*,
  16 F.3d 1443 (6th Cir. 1994) .............................................................24, 26

**Statutes & Rules**

11 U.S.C. § 101. ..................................................................................................24

11 U.S.C. § 544(a) ......................................................................................24, 25, 27

11 U.S.C. § 544(a)(1) .........................................................................................25, 27

11 U.S.C. § 544(a)(3)....................................................................................3, 25, 26

Cal. Bus. & Prof. Code § 10012 ...................................................................15, 16

Cal. Bus. & Prof. Code § 10131 ...................................................................13, 15

Cal. Bus. & Prof. Code § 10131.1 ................................................................13, 15

Cal. Bus. & Prof. Code § 10233 .............................................................13, 16, 17

Cal. Bus. & Prof. Code § 10233(a)...................................................................16

Cal. Bus. & Prof. Code § 10233.2 ................................................................ *passim*

Cal. Bus. & Prof. Code § 10238 ................................................................16

Cal. Civ. Code § 1214 ................................................................7, 27

Cal. Civ. Code § 2224 ................................................................18

Cal. Com. Code § 1301 ................................................................9

Cal. Com. Code § 9102(a)(71)................................................................11

Cal. Com. Code § 9301(1) ................................................................11, 14

Cal. Com. Code § 9307(e) ................................................................11

Del. Code Ann. tit. 6, § 1-201(20) ................................................................10

Del. Code Ann. tit. 6, § 1-301(a), (c) ................................................................9

Del. Code Ann. tit. 6, § 3-102(a) ................................................................9

Del. Code Ann. tit. 6, § 9-102(a)(65) ................................................................12

Del. Code Ann. tit. 6, § 9-102(a)(71) ................................................................11

Del. Code Ann. tit. 6, § 9-109(a)(1), (3) ................................................................12

Del. Code Ann. tit. 6, § 9-301(1) ................................................................11, 14

Del. Code Ann. tit. 6, § 9-307(e) ................................................................11

Del. Code Ann. tit. 6, § 9-312(a) ................................................................12, 14

Del. Code Ann. tit. 6, § 9-313(a) ................................................................12, 14

Del. Code Ann. tit. 6, § 9-317(a)(2)................................................................3, 26, 27

Fed. R. Bank. P. 7010 ................................................................1

Fed. R. Bank. P. 7012 ................................................................3

Fed. R. Bank. P. 7012(b) ................................................................3

Fed. R. Civ. P. 10(a) ................................................................1

Fed. R. Civ. P. 10(c) ................................................................2

Fed. R. Civ. P. 12(b)(6)................................................................1, 4, 6

Fed. R. Evid. 201 ..............................................................................................2, 4, 16

Local Bankr. Rule 7012-1 ...................................................................................3


**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 544.03 (Alan N. Resnick & Henry J. Sommer, eds.,
   16th ed. 2018) ................................................................................................3

8 WITKIN SUMMARY OF CAL. LAW, SECURITY TRANSACTIONS IN REAL PROPERTY
   § 55 (11th ed. 2017) .......................................................................................7

42 CAL. JUR. 3D *Liens* § 10 ..................................................................................21

51 AM. JUR. 2D *Liens* § 34...................................................................................21

RESTATEMENT OF THE LAW 3D, RESTITUTION AND UNJUST ENRICHMENT, § 55 ............................19

RESTATEMENT OF THE LAW 3D, RESTITUTION AND UNJUST ENRICHMENT, § 58 ............................23

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), some or all of which are defendants in the above-captioned adversary proceeding (the "Adversary Proceeding"),[2] hereby submit this Memorandum of Law in support of their motion (the "Motion") for entry of an order dismissing the Complaint for "failure to state a claim upon which relief can be granted," FRCP 12(b)(6); *see* FRBP 7012.

## I. INTRODUCTION[3]

1.      This Adversary Proceeding concerns "the real property located at 141 South Carolwood Drive, Holmby Hills, California" (the "Owlwood Property"), *see* Compl. ¶ 55, which the Plaintiffs admit is owned by Sturmer Pippin Investments, LLC ("Sturmer Pippin"), one of the Debtors, *see id.* ¶¶ 58–60.  The Plaintiffs claim to have lent funds to Woodbridge Mortgage Investment Fund 3A, LLC ("Fund 3A"), also one of the Debtors, which the Plaintiffs claim in turn lent funds to Sturmer Pippin, the owner of the Owlwood Property.  *See id.* ¶¶ 47–48, 53, 55–58, 65.  In connection with their loans to Fund 3A, the Plaintiffs claim to have been granted certain security interests by Fund 3A.  *See* Compl. ¶¶ 61, 66, 69.  Nowhere in their Complaint do

---

[2]      There is uncertainty as to precisely which Debtors are defendants in the Adversary Proceeding given the non-compliance by the plaintiffs (the "Plaintiffs") with Rule 10(a) of the Federal Rules of Civil Procedure ("FRCP"), made applicable herein by Rule 7010 of the Federal Rules of Bankruptcy Procedure ("FRBP").  In violation of the requirement that the caption of an initial pleading such as a complaint "name *all* the parties," FRCP 10(a) (emphasis added), Plaintiffs' *Complaint for Declaratory Judgment that Plaintiffs are Secured Creditors of the Debtors with a Valid, Perfected, First Priority Lien in Certain Real Property, and/or Proceeds from Sale of Certain Real Property* [Adv. Docket No. 1] (the "Complaint") identifies the defendants only as "Woodbridge Group of Companies, LLC, *et al.*" in both the caption and the body, *see* Compl. ¶ 17.  *Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption").

[3]      The Complaint is built on a fiction: that the documents the Plaintiffs received and the representations made to them were consistent with the underlying transactions and that the money they invested was actually channeled directly into the property in which they thought they were investing.  The reality is vastly different.  However, solely for purposes of the Motion, the Debtors assume that the documents on which the Complaint relies accurately reflect the transactions described and referred to therein.  To be clear, that the Debtors are engaging the Plaintiffs' theories on the Plaintiffs' terms is not and should not be deemed or construed to be an admission as to the occurrence, nature, or character of these or any other transactions.

the Plaintiffs claim that they lent any money to Sturmer Pippin (the owner of the Owlwood
Property), or that Sturmer Pippin granted them any security interest.

2.      Based on the foregoing allegations, the Plaintiffs seek a declaration that they hold
"pre-petition valid, perfected, first priority liens" against the Owlwood Property itself (Count I),
*see* Compl. ¶¶ 1 & 83–89; or, alternatively, "pre-petition valid, perfected, first priority liens"
against any and all proceeds from the sale and/or liquidation" of the Owlwood Property (Count
II), *see id.* ¶ 1 & 90–96; or, alternatively, some type of "constructive trust" or "equitable lien"
against the Owlwood Property or any proceeds therefrom (Count III), *see id.* ¶ 1 & 97–99.

3.      The allegations of the Complaint, together with the facts apparent from the
documents appended to the Complaint, *see* FRCP 10(c) ("A copy of a written instrument that is
an exhibit to a pleading is a part of the pleading for all purposes."), and the facts of which the
Court may properly take judicial notice under Rule 201 of the Federal Rules of Evidence
("<u>FRE</u>"), demonstrate that the Plaintiffs are not entitled to any of the three alternative
declarations they seek.

4.      ***First***, by the Plaintiffs' own telling, neither the owner of the Owlwood Property
(Sturmer Pippin) nor its purported lender (Fund 3A) ever granted the Plaintiffs a lien in any real
property.  Instead, Fund 3A purported to grant the Plaintiffs a security interest in a ***loan*** that
Fund 3A purportedly extended to Sturmer Pippin.  At most, the Plaintiffs have a security interest
in that loan—not in the Owlwood Property itself.  This is fatal to Count I of the Complaint.

5.      ***Second***, the basis of the Plaintiffs' claimed lien on proceeds from the Owlwood
Property appears to be their claimed security interest in the alleged loan made by Fund 3A to
Sturmer Pippin.  Even assuming for the sake of argument that such a loan was made, and further
assuming *arguendo* that a security interest in such loan could somehow translate into a security

interest in the proceeds of any sale of the Owlwood Property, Count II of the Complaint still fails

because it seeks a declaration that the Plaintiffs hold a ***perfected*** security interest.[4]  Any security

interest that the Plaintiffs may have is unperfected:  The Plaintiffs admit that they do not possess

the underlying loan documents, and the Court may take judicial notice of the absence of any filed

UCC-1 financing statement.

6.      ***Finally***, the two fallback theories—constructive trust and equitable lien—fail

because the Plaintiffs do not (because they cannot) allege that their funds can be traced to the

Owlwood Property.  The absence of any nexus between the Plaintiffs' money and the property

over which they seek to impose a constructive trust or equitable lien is fatal to the equitable

remedies at issue.  Even assuming, *arguendo*, that the Plaintiffs could properly plead tracing

under state law, Count III would still fail as a matter of federal bankruptcy law, which prohibits

the postpetition imposition of a constructive trust or equitable lien.

## II.  STATEMENT PURSUANT TO FRBP 7012 AND LOCAL RULE 7012-1

7.      Pursuant to FRBP 7012(b) and Rule 7012-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the

Debtors hereby consent to entry of a final order or judgment by this Court.

---

[4]      Plaintiffs' use of the term "perfected" is no accident, as perfection is critical to defeating the rights of a trustee or debtor-in-possession.  11 U.S.C. § 544(a)(3) (real property); DEL. CODE ANN. tit. 6, § 9-317(a)(2) (personal property); 5 COLLIER ON BANKRUPTCY ¶ 544.03 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2018) (same).

### III. BACKGROUND[5]

8.     Sturmer Pippin owns the Owlwood Property.  Compl. ¶ 59.  The Plaintiffs are not in contractual privity with Sturmer Pippin and are not creditors of Sturmer Pippin.  *See generally id.* ¶¶ 55–71 (describing contracts between Plaintiffs and Fund 3A) & Exs. 1 & 2 (exemplary loan and collateral documents between Plaintiffs and Fund 3A).  Instead, they are at most only lenders to Sturmer Pippin's lender, Fund 3A.  *See id.*

9.     By the Plaintiffs' telling, Fund 3A made a $63 million loan to Sturmer Pippin (the "Pledged Loan"), which loan was secured by a first lien on the Owlwood Property in favor of Fund 3A.  The Plaintiffs, in turn, made their own loans (the "Noteholder Loans") to Fund 3A "for the stated purpose" of funding the loan from Fund 3A to Sturmer Pippin.  *See* Compl. ¶¶ 57–58.  The Plaintiffs do not allege that Fund 3A actually used the funds raised from the Plaintiffs in a manner consistent with this "stated purpose."  The Complaint contains no allegations regarding how the Debtors actually used or disposed of the funds they received from the Plaintiffs.

10.    The Plaintiffs entered into written loan agreements (the "Noteholder Loan Agreements") with Fund 3A, and Fund 3A executed promissory notes in favor of the Plaintiffs (the "Notes" and, together with the Noteholder Loan Agreements, the "Noteholder Loan Documents").[6]  Sturmer Pippin is not a signatory to any of the Noteholder Loan Documents.

---

[5]     Consistent with the FRCP 12(b)(6) standard, the factual background set out in this section is based solely on the well-pled allegations set forth in the Complaint, including the documents appended thereto, as well as matters of which the Court may take judicial notice pursuant to FRE 201.  *See generally Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir. 2014) ("'To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Debtors dispute many of the facts alleged, but accept them as true solely for purposes of the Motion, as FRCP 12(b)(6) requires.

[6]     An exemplar Noteholder Loan Agreement and associated Note are attached as Exhibits 1 and 2 to the Complaint.

11.    Pursuant to the Noteholder Loan Agreements, Fund 3A purported to grant the Plaintiffs security interests in: (i) the Pledged Loan; (ii) the promissory note evidencing the Pledged Loan (the "Underlying Note"); (iii) the mortgage or deed of trust securing the Pledged Loan with an interest in the Owlwood Property (the "Underlying Mortgage"); and (iv) title insurance policies and such other instruments or documentation as may be executed and delivered to Fund 3A in conjunction with the Pledged Loan (collectively with the Pledged Loan, the Underlying Note, and the Underlying Mortgage, the "Underlying Loan Documents").

12.    Fund 3A executed (i) an Assignment of Promissory Note and Mortgage (the "Note Assignment"), and (ii) a Collateral Assignment of Note, Mortgage, and Other Loan Documents (the "Collateral Assignment" and, together with the Note Assignment, the "Assignments," unexecuted forms of which are included in Exhibit 1 to the Complaint).  The Assignments were issued "[a]s additional security for the" Noteholder Loans.  *See* Compl. ¶ 69; *see also* Note Assignment at p.1 (recital stating that Underlying Loan Documents are being assigned "as security for the [Noteholder Loan]"); Collateral Assignment, § 2 (stating that collateral is assigned "[a]s security for the performance of all obligations of [Fund 3A] to [applicable Plaintiff]").  Both of the Assignments are clear that Fund 3A shall be the party that will continue to receive the benefits of and exercise rights under the Underlying Loan Documents unless and until the occurrence of an Event of Default (as defined in the applicable Collateral Assignment).  *See* Note Assignment, § 1 (Fund 3A "shall be entitled to collect all payments of interest and all scheduled payments of principal … on the [Underlying Loan Documents]" unless and until an Event of Default has occurred); Collateral Assignment, § 5 ("[Applicable Plaintiff] hereby grants [Fund 3A] the right to continue to receive the benefits of,

and exercise the rights under, the Underling [Loan] Documents unless an Event of Default …

exists[.]").

13.     One final background fact of which the Court may properly take judicial notice is

the absence of any filed UCC-1 financing statement as against Fund 3.  *See* Stern Decl. ¶ 2 & Ex.

A.  The Complaint does not allege that there was any filed UCC-1 financing statement, and

indisputably reliable public records confirm such absence.  *See generally In re Silver Dollar,*

*LLC*, 388 B.R. 317, 329 (Bankr. E.D. Tenn. 2008) (taking judicial notice of UCC-1 financing

statement); *cf. In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1240 (N.D. Cal. 2008) (taking

judicial notice of the lack of publicly filed restatement of financial condition).

## IV.  APPLICABLE LEGAL STANDARD

14.     The question before the Court is whether the Complaint "contain[s] sufficient

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  In making this determination, the Court must first "peel away those allegations that are

no more than conclusions and thus not entitled to the assumption of truth," and then examine the

remaining "well-pled allegations, assume their veracity, and determine whether they plausibly

give rise to a right to relief."  *Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 382 (3d

Cir. 2016) (footnotes and internal quotation marks omitted).  *See also supra* note 5 (describing

the types of materials that may be considered on an FRCP 12(b)(6) motion to dismiss).

## V.  ARGUMENT

**A.     Count I Must Be Dismissed Because the Plaintiffs Do Not Hold Any Liens in Real**
**Property**

15.     Count I of the Complaint seeks a declaratory judgment to "determine the validity,

priority, or extent of the Plaintiffs' liens or other interests in the Owlwood [Property]."

Compl. ¶ 84.  In their Prayer for Relief, the Plaintiffs seek a judgment "[d]eclaring that the Plaintiffs hold pre-petition, valid, perfected, first priority liens *against the Owlwood [Property]* at some other time prior to the Petition Date" (emphasis added).  Count I must be dismissed because the facts alleged in the Complaint do not plausibly support the conclusion that Plaintiffs hold a lien (much less a valid, perfected, first priority lien) in the Owlwood Property, and in fact the documents attached to the Complaint expressly refute that contention.

16.     To have a perfected security interest in real property, the putative secured creditor must have a recorded mortgage or deed of trust executed in its favor and duly recorded in the land records as against the real property.  *See* CAL. CIV. CODE § 1214; *Hopper v. Keys*, 92 P. 1017, 1020 (Cal. 1907) ("That the recordation of the mortgage, under our present system, is one of the necessary and indispensable requisites to protect the rights of the mortgagee against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, is a self-evident proposition."); 8 WITKIN SUMMARY OF CAL. LAW, SECURITY TRANSACTIONS IN REAL PROPERTY § 55 (11th ed. 2017) ("[T]he California real property recording system gives priority to the person whose instrument is first recorded, if that person is a bona fide purchaser or encumbrancer without notice of prior interests.  Any subsequently recorded mortgage is inferior.").  That has not occurred here and that is fatal to the Complaint's first claim.  The Plaintiffs acknowledge that Sturmer Pippin—not Fund 3A—is the entity that owns the Owlwood Property, *see* Compl. ¶ 59, and nowhere in the Complaint do the Plaintiffs allege that Sturmer Pippin granted the Plaintiffs liens in the Owlwood Property—let alone that any such liens were duly recorded in the land records against the Owlwood Property.  To the contrary, the borrower under the Noteholder Loans is Fund 3A.  Fund 3A does not own the Owlwood Property and could not and did not grant the Plaintiffs liens in the Owlwood Property.

Consistent with the documents attached to the Complaint, paragraph 61 of the Complaint alleges

that the collateral for the Noteholder Loans consists of the Underlying Loan Documents and does

not include the Owlwood Property itself.

17.     The Plaintiffs obliquely suggest that a lien in the Owlwood Property may have

arisen from the Assignments.  *See, e.g.*, Compl. ¶ 70 (alleging that "Fund 3A, by and through the

Collateral Assignment intended, and did exchange to the Plaintiffs, Fund 3A's interest in the real

property contract between Fund 3A and Sturmer Pippen for the Owlwood Estate"); *id*. ¶ 71

(alleging that "Fund 3A, by and through the Collateral Assignment, exchanged to the Plaintiffs,

the promissory note secured by Sturmer Pippen's lien on the Owlwood Estate").  The Plaintiffs

appear to assert that Fund 3A transferred (or, in the Plaintiffs' words, "exchanged") the

Underlying Loan Documents to the Plaintiffs such that the Plaintiffs "hold first position liens on

the Owlwood estate…."  *Id.* ¶ 74.

18.     There are multiple flaws in this theory.  First and foremost, it is not what the

documents say.  The terms of the documents attached to the Complaint make clear that the

Assignments were made solely as security for the Noteholder Loans, plainly contradicting the

Plaintiffs' argument that there was any transfer or "exchange" of Fund 3A's interest in the

Underlying Loan Documents:

- The form of Note Assignment attached as Exhibit B to the Noteholder Loan Agreement as Exhibit B expressly states that Fund 3A is assigning its interest in the Assigned Documents (as defined in the Note Assignment) ***"as security for" the "term loan" extended by Mr. Faudel to Fund 3A***.  Further, the Note Assignment provides that "[s]o long as no Event of Default shall have occurred, Assignor [Fund 3A] shall be entitled to collect all payments of interest and all scheduled payments of principal … on the Assigned Documents."  Note Assignment, § 1.

- The form of Collateral Assignment attached as Exhibit C to the Noteholder Loan Agreement also makes clear that the Underlying Note and Underlying Mortgage were assigned to Mr. Faudel "***[a]s security for***

***the performance of all obligations of Borrower [Fund 3A] to Lender [Mr. Faudel] under the Note.***" Collateral Assignment, § 2 (emphasis added). The Collateral Assignment further provides that Fund 3A shall "continue to receive the benefits of, and exercise the rights under, the Underlying Documents unless an Event of Default ... exists …. *Id.*, § 5.

19.    Based on the plain terms of the documents that the Plaintiffs signed, they provided loans to Fund 3A and were to receive a security interest in the Underlying Loan Documents between Fund 3A and Sturmer Pippin. The transaction documents unambiguously provide that the upside to each Plaintiff was capped at the stated obligations owed to it by Fund 3A. There is no plausible claim that there was any exchange.

20.    Second, Article 3 of the Delaware Uniform Commercial Code,[7] governs the transfer of "instruments" such as the Underlying Notes. *See* Del. Code Ann. tit. 6, § 3-102(a). Under Article 3, transfer or "negotiation" of an instrument is defined as "a transfer of ***possession*** … of an instrument by a person other than the issuer to a person who thereby becomes its holder." *Id.*, § 3-201(a) (emphasis added). Article 3 makes clear that "negotiation" (*i.e.*, transfer of an instrument) cannot occur until both possession of the instrument is transferred ***and*** the instrument is endorsed in favor of the transferee. *See id.*, § 3-201(b).

21.    Here, the Plaintiffs concede that they are not in possession of any of the Underlying Loan Documents, including the Underlying Note. *See* Compl. ¶¶ 43 & 75. Nor do they allege that the Underlying Note was endorsed to any of the Plaintiffs. In the absence of such delivery and endorsement, the Underlying Note was not "negotiated" to the Plaintiffs. The Plaintiffs' lack of possession means that they are not "holders" of the Underlying Note under the

---

[7]    The Noteholder Loan Documents attached to the Complaint reflect the parties' agreement that Delaware shall govern. Under the Uniform Commercial Code, the parties' choice-of-law provision is binding except to the extent that one of certain Uniform Commercial Code provisions specifies the applicable law. *See* Del. Code Ann. tit. 6, § 1-301(a), (c); Cal. Comm. Code, § 1301(a), (c). Accordingly, the Article 3 analysis herein cites to the Delaware Uniform Commercial Code.

Delaware Uniform Commercial Code. *See* DEL. CODE ANN. tit. 6, § 1-201(20) (defining "holder" of a negotiable instrument as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"). Because the Plaintiffs are not "holders" of the Underlying Note, they are not "person[s] entitled to enforce" the Underlying Note by pursuing a mortgage remedy. *See id.*, § 3-301 (defining "person entitled to enforce" in pertinent part as "(i) the holder of the instrument [or] (ii) a nonholder in possession of the instrument who has the rights of a holder").

22.    The decision in *Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*, 440 B.R. 624 (Bankr. D.N.J. 2010), is instructive. There, Countrywide filed a proof of claim in its capacity as servicer for the Bank of New York. *Id.* at 626. As of the time of the filing of the proof of claim, Countrywide had assigned the debtor's mortgage to the Bank of New York, but Countrywide did not transfer possession of the associated note to the Bank. *Id.* at 629. Following a thorough analysis of New Jersey's Uniform Commercial Code (which is identical in all material respects to the Delaware Uniform Commercial Code), the court determined that the fact that Bank of New York never had possession of the underlying note was fatal to its enforcement, notwithstanding that the note was referenced in the recorded assignment of mortgage. *Id.* at 629–30 & 633. Accordingly, the court sustained the debtor's objection to the proof of claim. *Id.* at 634. *See also In re Grant Covert*, 658 F. App'x 175, 177 (3d Cir. 2016) (under analogous provisions of New Jersey UCC, "whoever was in possession of the note would become the 'holder' of the note, and would be entitled to enforce the note"); *Bank of America, N.A. v. Gibson*, 102 A.3d 462, 466 (Pa. Super. Ct. 2014) (analyzing analogous provisions of Pennsylvania's UCC and concluding "[t]he record in this case clearly shows that Bank of America holds the note, and therefore" has standing to enforce the mortgage).

23.     Similarly, here Fund 3A, the person in possession of the Underlying Note, is the holder of the Underlying Note and the only party entitled to enforce it.  To be clear, the Debtors do not dispute that the Plaintiffs hold claims against Fund 3A pursuant to the Noteholder Loan Documents.  However, the Plaintiffs fail to allege any plausible, enforceable claim against Sturmer Pippin or any lien in real property owned by Sturmer Pippin.

## B.      Count II Must Be Dismissed Because the Plaintiffs Do Not Have Perfected Security Interests in the Proceeds of the Owlwood Property

24.     Count II seeks a judgment declaring that the Plaintiffs hold perfected liens in the *proceeds* of the Owlwood Property.  *See* Compl. ¶¶ 90–96 & Prayer for Relief.  Liberally construed, the Plaintiffs appear to claim a lien on proceeds from the Owlwood Property on account of their alleged security interest in the alleged loan made by Fund 3A to Sturmer Pippin.[8]  This argument has multiple flaws, but for purposes of the Motion, the Court need only determine that the Plaintiffs' alleged security interests in the Underlying Loan Documents are not perfected.  That conclusion is sufficient to dispose of Count II.

### 1.      The Plaintiffs Are Not Properly Perfected Under Article 9

25.     Under the Uniform Commercial Code, as adopted by Delaware,[9] the Underlying Loan Documents are personal property—specifically, promissory notes and instruments—the

---

[8]     *Cf. Objection of Lise la Rochelle, et al. Noteholders to the Motion of the Official Committee of Unsecured Creditors for … Leave, Standing and Authority to Prosecute Certain Causes of Action on Behalf of Certain Debtors and their Estates* [Bankr. Docket No. 1625] (the "Objection to Committee Standing Motion"), at ¶¶ 5-9 (asserting a "first priority lien in [the Owlwood Property]," but relying extensively on California Business and Professions Code section 10233.2, which expressly applies only for purposes of Articles 3 and 9 of the California Commercial Code).

[9]     Under the Uniform Commercial Code, as adopted in both California and Delaware, "[e]xcept as otherwise provided in this section, when a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral."  DEL. CODE ANN. tit. 6, § 9-301(1); *see also* CAL. COMM. CODE, § 9301(1) (same).  Under Article 9, a limited liability company is "located" in the state in which it was organized.  *See* DEL. CODE ANN. tit. 6, §§ 9-307(e) & 9-102(a)(71); *see also* CAL. COMM. CODE, §§ 9307(e) & 9102(a)(71).  Here, Fund 3A is a Delaware limited liability company, *see* Compl. ¶ 17, and thus the Delaware Uniform Commercial Code "governs perfection [and] the effect of perfection or nonperfection."  DEL. CODE ANN. tit. 6, § 9-301(1); *see also* CAL. COMM. CODE § 9301(1) (same).  Furthermore, all of the loan documents attached to the Complaint provide that Delaware law shall govern.

perfection of which is governed by Article 9 of the Delaware Uniform Commercial Code.[10]

Under the Delaware Uniform Commercial Code, perfection of a security interest in a promissory

note or instrument granted to secure an obligation can only be achieved through possession of

the note or instrument, or by the filing of a UCC-1 financing statement with respect to the

instrument.  *See* DEL. CODE ANN. tit. 6, § 9-312(a) & 9-313(a).

26.     Here, the Plaintiffs admit that they have never had possession of the Underlying

Loan Documents, *see* Compl. ¶ 43, which they allege were in Fund 3A's possession, *id.* ¶ 75.

Nor does the Complaint allege that any of the Plaintiffs filed a UCC-1 financing statement in

Delaware naming Fund 3A as debtor.  Accordingly, the Plaintiffs do not hold properly perfected

security interests in the Underlying Loan Documents.

### 2.      The California Business & Professions Code Does Not Cure Plaintiffs' Failure to Perfect Under Article 9

27.     The Complaint obliquely references the California Business and Professions Code

("Cal. B&P Code"), but does not explain how, if at all, it applies to this Adversary Proceeding.

In their Objection to Committee Standing Motion, the Plaintiffs have suggested that their failure

to properly perfect their security interests under Article 9 of the Delaware Uniform Commercial

Code can be cured by section 10233.2 of the Cal. B&P Code and a Ninth Circuit case

interpreting that section, *Neilson v. Chang (In re First T.D. & Investment, Inc.)*, 253 F.3d 520

(9th Cir. 2001).  *See* Bankr. Docket No. 1625 at ¶¶ 5-9.

---

[10]     *See* DEL. CODE ANN. tit. 6, §§ 9-102(a)(65) (definition of "promissory note") & 9-102(a)(47) (definition of "instrument" as the terms used in Article 9).  Article 9 of the Delaware Uniform Commercial Code applies to any transaction that creates a security interest in personal property.  *Id.* § 9-109(a)(1), (3).

28.      As a threshold matter, Cal. B&P Code § 10233.2 expressly applies only "[f]or purposes of Division 3 … and Division 9 … of the Commercial Code."[11]  Accordingly, it has no application for purposes of determining whether the Plaintiffs hold valid, perfected liens in real property.  At most, Cal. B&P Code could theoretically—under circumstances entirely different from those alleged in the Complaint—cure the Plaintiffs' failure to perfect their security interests in *personal property* (*i.e.*, the Underlying Loan Documents).  However, as explained below, Cal. B&P Code § 10233.2 has no bearing on whether the Plaintiffs are perfected as (i) the Plaintiffs' documents all explicitly contain Delaware choice of law provisions, and, (ii) under applicable law, Delaware law would apply even in the absence of such a choice of law provision.  Additionally, even if the California statute were applicable, its requirements were plainly not met here.

29.      Cal. B&P Code § 10233.2 provides that as a matter of *California* law, if the criteria set forth in the statute are satisfied, then a lender may be deemed to hold a perfected security interest in promissory notes or collateral instruments and documents notwithstanding such lender's lack of possession of the collateral.  The statute provides:

> For the purposes of Division 3 (commencing with Section 3101) and Division 9 (commencing with Section 9101) of the Commercial Code, when a broker, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1, has arranged a loan or sold a promissory note or any interest therein, and thereafter undertakes to service the promissory note on behalf of the lender or purchaser in accordance with Section 10233, delivery, transfer, and perfection shall be deemed complete even if the broker retains possession of the note or collateral instruments and documents, provided that the deed of trust or an assignment of

---

[11]      The peculiar terminology—use of division vs. article and the reference to the Commercial Code vs. the Uniform Commercial Code—mark the references as referring solely to California statutes.  *Cent. Cal. Equip. Co. v. Dolk Tractor Co.*, 144 Cal. Rptr. 367, 368 n.1 (Cal. App. 1978) ("[I]n California the code uses the term 'division 9' and this opinion follows the terminology of 'article 9' as adopted by the National Conference of Commissioners on Uniform State Laws.").  Additionally, California's legislature could not amend the Delaware UCC.

> the deed of trust or collateral documents in favor of the lender or
> purchaser is recorded in the office of the county recorder in the
> county in which the security property is located, and the note is
> made payable to the lender or is endorsed or assigned to the
> purchaser.

Cal. B&P Code § 10233.2.  *In re First T.D. & Investment* is the only published case that has

cited Cal. B&P Code § 10233.2.  On the facts present in that case, the elements of the statute

were satisfied and the Ninth Circuit held that the lenders were perfected even in the absence of

possession.  253 F.3d at 531.

30.     Here, neither Cal. B&P Code § 10233.2 nor *In re First T.D. & Investment* has any

application.  By its express terms, Cal. B&P Code § 10233.2 modifies the perfection rules of

only the ***California*** Commercial Code.  *See* Cal. B&P Code § 10233.2 ("***For the purposes of***

Division 3 (commencing with Section 3101) and Division 9 (commencing with Section 9101) of

***the Commercial Code*** ….") (emphasis added).  The California Commercial Code, however, is

inapplicable for purposes of determining whether the Plaintiffs have perfected security interests.

Not only do the Plaintiffs' documents choose Delaware law,[12] this state's law would have to

apply any way.  Because Fund 3A is formed under Delaware law, the Delaware Uniform

Commercial Code "governs perfection, the effect of perfection or nonperfection, and the priority

of a security interest in collateral."  DEL. CODE ANN. tit. 6, § 9-301(1); *see also* CAL. COMM.

CODE, § 9301(1) (same).  Because the Delaware Uniform Commercial Code is the applicable

law and is unaltered by Cal. B&P Code § 10233.2, the standard Uniform Commercial Code rules

requiring perfection by possession or by the filing of a UCC-1 financing statement are fully

applicable to the Plaintiffs.  *See* DEL. CODE ANN. tit. 6, §§ 9-312(a) & 9-313(a).  As noted, the

Plaintiffs have not perfected by either of these means.

---

[12]     All of the Noteholder Loan Documents attached to the Complaint state the parties' intent and agreement
that Delaware law shall govern.  *See* Complaint, Exhs. 1 & 2.

31.    Even beyond the statute's dispositive inapplicability, the Plaintiffs fail to satisfy multiple elements of the statute.  In *In re First T.D. & Investment*, the Ninth Circuit divided Cal. B&P Code § 10233.2 into a five-element test:

> (1) a "broker, acting within the meaning of" California Business and Professions Code §§ 10131 or 10131.1 possesses the security instrument; (2) the broker has "arranged a loan" or "sold a promissory note or any interest therein"; (3) the broker "undertakes to service the promissory note"; (4) the trust deed or collateral documents in favor of the lender are "recorded in the office of the county recorder in the county in which the security property is located"; and (5) "the note is made payable to the lender or is endorsed or assigned to the purchaser."

253 F.3d at 526 (quoting Cal. B&P Code § 10233.2).

32.    Cal. B&P Code § 10233.2 plainly is intended to apply either where (1) a broker has arranged a loan for a third party where the third party is the lender and the broker's role is as the loan servicer, or (2) the broker has sold a loan to a loan purchaser and the broker's role is as the loan servicer.  As neither of these fact patterns describes the Plaintiffs' investment—here, the Plaintiffs assert that Fund 3A made the loan to Sturmer Pippin itself and, as noted, did not sell that loan to the Plaintiffs—it is unsurprising that many of the elements of Cal. B&P Code § 10233.2 are not met.  Below are two of the more obvious examples.

33.    ***First***, the statute applies only where "***a broker***, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1, … retains possession of the note or collateral instruments and documents."  Cal. B&P Code § 10233.2 (emphasis added).  Section 10012 of the Cal. B&P Code, which appears in Part 1 of Division 4 of the Cal. B & P Code (denominated, respectively, "Licensing of Persons" and "Real Estate"), provides that "[b]roker, when used without modification, means a person ***licensed as a broker*** under any of the

provisions of this part." Cal. B&P Code § 10012 (emphasis added).[13] The relevant "part" runs

from Cal. B & P Code § 10000 through § 10580. Therefore, when Cal. B&P Code § 10233.2

refers to "a broker," it necessarily means a California licensed real estate broker, not "a broker"

in any generic or colloquial sense. *See Neilson v. Dwyer (In re Cedar Funding, Inc.)*, 2011

Bankr. LEXIS 3487, at *28 (Bankr. N.D. Cal. Sept. 12, 2011) ("The court disagrees with the

Chapter 11 Trustee's [Cal. B&P Code] analysis for the simple reason that no evidence has been

offered demonstrating that CFI was a licensed broker. Section 10233.2 only applies to 'brokers,'

which [Cal. B&P Code] §10012 defines as a 'licensed' broker."). Although the Plaintiffs make

the conclusory allegation that "[p]ursuant to the California Code of Business and Professions,

Fund 3A acted as a 'broker,'" *see* Compl. ¶ 77, which this Court need not accept as true, *see*

*Iqbal*, 556 U.S. at 678, the Plaintiffs do not allege that Fund 3A was a licensed real estate broker

within the meaning of the statute, and in fact it was not. *See* Stern Decl. ¶ 3 & Exs. B & C.[14]

34.     *Second*, a mandatory element of Cal. B&P Code § 10233.2 is that the broker must

"undertake[] to service the promissory note on behalf of the lender or purchaser in accordance

with Section 10233." Section 10233, in turn, requires, *inter alia*, a "written authorization from

the borrower, the lender, or the owner of the note or contract, that is ***included within the terms of***

***a written servicing agreement*** that satisfies [certain requirements set forth in Cal. B&P Code

§ 10238]." Cal. B&P Code § 10233(a) (emphasis added). In *In re First T.D. & Investment*, this

element was undisputed; the broker-debtor had entered into a "Servicing Agreement" with each

---

[13]     Moreover, Cal. B&P Code § 10233.2 requires that the broker "undertakes to service the promissory note …
in accordance with Section 10233." Section 10233, in turn, applies only to "[a] real estate ***licensee*** who undertakes
to service a promissory note." Cal. B&P Code § 10233 (emphasis added).

[14]     Exhibits B and C to the Stern Declaration are printouts of the results of searches of the California Bureau of
Real Estate's ("CBRE") online database of licensed real estate brokers. Exhibits B and C show that Fund 3A is not
a licensed broker. The Court may take judicial notice of the CBRE search results under Rule 201 of the Federal
Rules of Evidence. *Cf. LDK Solar*, 584 F. Supp. 2d at 1240; *Silver Dollar*, 388 B.R. at 329.

investor that authorized the broker-debtor, acting as "servicing agent," to collect all loan payments from borrowers and to take other actions necessary or convenient to servicing of the note. 253 F.3d at 524. Here, the Plaintiffs do not allege the existence of any written servicing agreements, and in fact ***admitted*** in their Objection to Committee Standing Motion that they cannot satisfy this element of the statute. *See* Bankr. Docket No. 1625, ¶ 8 (acknowledging that "not all the criteria of [Cal B&P Code §] 10233 were met").

35.    For the foregoing reasons, either of which is sufficient to defeat application of Cal. B&P Code § 10233.2 (even if that statute were otherwise applicable), Cal. B&P Code § 10233.2 does not cure the Plaintiffs' failure to properly perfect their alleged security interests in the Underlying Loan Documents.

**C.    Count III Must Be Dismissed Because Plaintiffs Do Not Plausibly Allege a Constructive Trust Over or Equitable Lien in the Owlwood Property**

36.    Count III of the Complaint seeks a declaration that the Plaintiffs have a lien in the Owlwood Property or the proceeds thereof pursuant to one of the Plaintiffs' two fallback theories:  constructive trust or equitable lien.  As explained below, the equitable remedies sought by the Plaintiffs fail as a matter of law under both state law and bankruptcy law.

**1.    The Plaintiffs Fail to State Plausible Claims Under Applicable Non-Bankruptcy Law**

**a.    The Constructive Trust Claim Fails as a Matter of State Law**

37.    The Plaintiffs allege that they "have a first-in-priority, valid security interests [*sic*] in the Owlwood [Property], and/or the proceeds derived from the sale and/or liquidation of same pursuant to the doctrine of constructive trust."  Compl. ¶ 98; *see also* Prayer For Relief (requesting judgment declaring that "Plaintiffs hold a constructive trust over the Owlwood [Property] and/or the proceeds derived from the sale and/or liquidation of the Owlwood [Property]").

38.     Under California law,[15] "[a] constructive trust is an involuntary equitable trust created as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner." *In re Real Estate Assocs. P'ship Litig.*, 223 F. Supp. 2d 1109, 1140 (C.D. Cal. 2002).  "A constructive trust is not a substantive device but merely a ***remedy*** to compel a person not justly entitled to property to transfer it to another who is entitled thereto . . . ." *Davies v. Krasna*, 535 P.2d 1161, 1170 (Cal. 1975) (emphasis in original).[16]  California has codified its constructive trust doctrine in section 2224 of the Civil Code, which provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."  CAL. CIV. CODE § 2224.[17]

39.     Here, the Plaintiffs fail to state a claim upon which the constructive trust remedy can be granted under state law.  A party asserting a constructive trust over property under California law "bears the burden of 'tracing the alleged trust property specifically and directly' back to the act that created the trust."  *True Traditions, LC v. Wu*, 552 B.R. 826, 840 (N.D. Cal. 2015) (quoting *In re Advent Mgmt. Corp.*, 104 F.3d 293, 295 (9th Cir. 1997)); *see also Fowler v. Fowler*, 39 Cal. Rptr. 101, 105 (Ct. App. 1964) (in action to impose constructive trust on defendant's property, plaintiff had burden of proving that money deposited by her in their joint

---

[15]     The Plaintiffs do not clarify whether they seek imposition of a constructive trust under California or Delaware law.  Accordingly, where appropriate, the Debtors cite the law of both states.  For purposes of the Motion, it makes no difference which state's constructive trust law applies, as the constructive trust laws of California and Delaware are substantially similar in all respects material to the Motion.

[16]     *See also Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) ("The doctrine of constructive trust . . . is an equitable remedy . . . and is viewed as a remedial [and] not a substantive institution." (citation and internal quotation marks omitted)).

[17]     Under Delaware law, the test for imposition of a constructive trust is:  "When one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed."  *Hogg*, 622 A.2d at 652.

account was invested in property, and she failed to meet burden where there was no evidence

concerning expenditure of money by defendant).[18]  *See also* RESTATEMENT OF THE LAW 3D,

RESTITUTION AND UNJUST ENRICHMENT, § 55 cmt. g (3rd 2011) ("Constructive trust permits the

claimant to assert ownership of (i) specifically identifiable property for which the defendant is

liable in restitution or (ii) its traceable product….  A claimant who can show unjust enrichment,

but who cannot identify such property in the hands of the defendant, is not entitled to the remedy

of constructive trust. This fundamental limitation, commonly referred to as the 'tracing

requirement,' applies in one form or another to all the principal means of specific relief in

restitution (constructive trust, equitable lien, subrogation).").[19]

40.    The Complaint fails to properly plead that their money can be traced to the

Owlwood Property.  The Plaintiffs conspicuously fail to allege that the funds allegedly provided

by them were actually (i) loaned by Fund 3A to Sturmer Pippin, and, in turn, (ii) used by Sturmer

Pippin to purchase the Owlwood Property.  The Plaintiffs allege that they made loans to Fund 3A

"for the stated purpose" of funding a loan from Fund 3A to Sturmer Pippin, *see* Compl. ¶¶ 57-58,

but the Plaintiffs do ***not*** allege that Fund 3A actually used the funds consistently with this "stated

---

[18]    Delaware law is in accord.  *See, e.g.*, *B.A.S.S. Group, LLC v. Coastal Supply Co.*, 2009 Del. Ch. LEXIS 166, at *30 (Del. Ch. June 19, 2009) ("A constructive trust may be imposed upon specific property [or] identifiable proceeds of specific property, and even money so long as it resides in an identifiable fund to which the plaintiff can trace equitable ownership.  If the unjustly obtained funds can be traced into specific property, then a constructive trust can be imposed on the property . . . ." (citation, internal quotation marks, and footnote omitted)); *Pike v. Commodore Motel Corp.*, 1986 Del. Ch. LEXIS 485, at *13 (Del. Ch. Nov. 14, 1986) ("The converted property must then be traced to the specific assets into which Pike's distributive share was converted, a constructive trust being then imposed upon those traced assets….").

[19]    One of the illustrations following the quoted comment is particularly on-point:  "Swindler deposits forged checks with Bank and withdraws $ 250,000 before his activities are detected and Swindler files for bankruptcy.  The assets in the hands of the bankruptcy trustee include $ 30,000 in cash (wrapped and dated by Bank's tellers) that Swindler withdrew from Bank on the day before his accounts were closed.  Bank is unable to show what became of the remaining $ 220,000.  Bank has a claim against Swindler in restitution (among other theories) to recover $ 250,000 plus interest (§§ 13, 41).  ***Bank is also entitled to the remedy of constructive trust, but only with respect to the $ 30,000 that Bank can identify.  Swindler's trustee holds the $ 30,000 in constructive trust for Bank,*** and Bank has an unsecured claim against Swindler for $ 220,000."  *Id.* ¶ 16 (emphasis added).

purpose." Indeed, the Complaint contains no allegations whatsoever regarding how the Debtors actually used or disposed of the funds they received from the Plaintiffs, and does not establish any nexus between the Plaintiffs' money and the Owlwood Property.[20] Absent allegations that the Plaintiffs' funds can be "specifically and directly" traced to the Owlwood Property, the Plaintiffs cannot meet their burden to establish a constructive trust over the Owlwood Property and Count III must fail as a matter of law. Plaintiffs' inability to allege that their money was actually channeled into the Owlwood Property is consistent with the Committee Standing Motion, which summarizes how the Woodbridge entities regularly commingled investor funds and used funds in a manner contrary to representations made to investors. In light of the Debtors' widespread commingling, there is no amendment to the Complaint that can cure the Plaintiffs' inability to allege the "specific and direct" tracing required to establish a constructive trust over the Owlwood Property.

41.    To the extent the Complaint could be construed to assert a constructive trust over the Underlying Loan Documents (as opposed to the real property itself),[21] such claim fails for the same reason. The Plaintiffs do not allege that their funds were actually loaned by Fund 3A to Sturmer Pippin, nor do they allege any other nexus between their money and the origination of the Underlying Loan Documents. Accordingly, the facts as pled do not meet Plaintiffs' burden to establish "specific and direct" tracing.

---

[20]    Paragraphs 37-39 of the Complaint describe "typical transactions" in which investor funds were generally used to purchase properties, but the Complaint contains no *specific* allegation that the Plaintiffs' funds were actually used to acquire the Owlwood Property.

[21]    Even under the most charitable reading of the Complaint, it does not seek imposition of a constructive trust over or equitable lien in the Underlying Loan Documents. Nevertheless, solely to demonstrate the futility of amending the Complaint, and with a full reservation of rights, this Part V.C assumes, *arguendo*, that the Plaintiffs seek such equitable remedies with respect to the Underlying Loan Documents.

### b.       The Equitable Lien Claim Fails as a Matter of State Law

42.       The Plaintiffs' equitable lien theory fares no better than their request for imposition of a constructive trust.  Whereas a constructive trust is a remedy to compel the person in possession of wrongfully acquired property to return the property to its rightful owner, *In re Real Estate Assocs.*, 223 F. Supp. 2d at 1140, imposition of an equitable lien subjects the property to a lien but does not require any transfer of the property.  "An equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property."  *Cnty. of Los Angeles v. Constr. Laborers Trust Funds for S. Cal. Admin. Co.*, 39 Cal. Rptr. 3d 917, 920 (Ct. App. 2006) (quoting 42 CAL. JUR. 3D *Liens* § 10).  "It may arise from a contract which reveals an intent to charge particular property with a debt or out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings."  *Id.* (citation and internal quotation marks omitted).

43.       "To succeed on their claim for an equitable lien as a matter of law, plaintiffs must establish that 1) they have no adequate remedy at law, 2) [Fund 3A] is indebted to plaintiffs, 3) there is identifiable property against which the debt could be charged, and 4) *all parties to the transaction intended that the identified property would serve as security for the debt*."  *Rollins v. Neilson (In re Cedar Funding, Inc.)*, 408 B.R. 299, 313 (Bankr. N.D. Cal.) (emphasis added) (citing 51 AM. JUR. 2D *Liens* § 34).  In addition, the Plaintiffs "may seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien," only if they can show that "money or property identified as belonging in good conscience to the plaintiff can *clearly be traced* to [the Owlwood Property]."  *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 309 (3d Cir. 2008) (emphasis added); *Holder v. Williams*, 334 P.2d 291, 292 (Cal. Ct. App. 1959) (noting that the "basic purpose[]" of an equitable lien is "to identify and impress

upon certain property the beneficial rights that have arisen in an innocent party who in some way ***contributed to the acquisition, protection or improvement*** of that property" (emphasis added)).

44.     Here, the Plaintiffs' request to impose an equitable lien on the Owlwood Property fails because, *inter alia*, the Complaint does not plausibly allege that all parties to the transaction intended that the Owlwood Property would secure Fund 3A's debt to the Plaintiffs.  Although the Plaintiffs make the conclusory assertion that the Plaintiffs believed—and were told by Fund 3A—that "the [Plaintiff] Loans would be secured against the Owlwood Estate" and "they would hold first position liens on the Owlwood Estate," Compl. ¶¶ 73-74, such assertions are flatly contradicted by more specific portions of the Complaint and the documents attached thereto. Paragraph 61 of the Complaint states that the collateral for the Noteholder Loans is the Underlying Loan Documents.  The collateral ***does not*** include the Owlwood Property.  This is consistent with the documents attached to the Complaint, which purport to grant the Plaintiffs a security interest in the Underlying Loan Documents, but not the Owlwood Property itself.  Had all parties intended for the Plaintiffs to receive liens in real property, the parties' documents would reflect that intent.

45.     The Plaintiffs' equitable lien theory suffers from another fundamental defect.  As with their constructive trust claim, the claim fails because the Plaintiffs have not adequately pled tracing.  "The equitable lien of the beneficiary depends upon his being able to trace the trust property into the particular property against which he seeks to enforce the trust, or a commingling with the fund upon which he asserts his lien.  Some degree of identification with the property which he seeks to subject to his claim is essential."  *Walsh v. Majors*, 49 P.2d 598, 606 (Cal. 1935).  As noted above, the Complaint does not (because it cannot) allege that the Plaintiffs' funds were actually channeled into the Owlwood Property.  Absent any factual nexus

between the Plaintiffs' funds and the property on which they seek to impose an equitable lien,

Count III of the Complaint must be dismissed.  *See, e.g.*, *Pell*, 539 F.3d at 309; *see also Rollins*,

408 B.R. at 316; RESTATEMENT OF THE LAW 3D, RESTITUTION AND UNJUST ENRICHMENT, § 58

cmt. e (3rd 2011) ("[T]he embezzlement victim who seeks restitution (via constructive trust or

equitable lien) from property acquired with embezzled funds must satisfy the trier of fact that the

embezzler was using stolen funds when he purchased the property in question."); *id.* § 55.

46.     Similarly, even assuming, *arguendo*, that the Complaint could be construed to

assert an equitable lien in the Underlying Loan Documents (it does not), that claim, too, would

fail for inability to plead tracing.  As noted, the Complaint does not allege any facts regarding the

Debtors' actual use of the Plaintiffs' funds, much less any link between the funds and the

Underlying Loan Documents.  Accordingly, there is no plausible basis under state law for an

equitable lien in the Underlying Loan Documents.

### 2.     Bankruptcy Law Precludes Application of the Equitable Remedies Sought by Plaintiffs

#### a.     The Constructive Trust Claim is Not Viable in Bankruptcy

47.     Even assuming, *arguendo*, that the Plaintiffs could state a plausible constructive

trust claim under state law (they cannot), Count III nevertheless must be dismissed because the

constructive trust claim fails as a matter of federal bankruptcy law.  The Third Circuit Court of

Appeals recently concluded that "under the unique rules of bankruptcy, a debtor's estate is

deemed to include fraudulently obtained property, so long as the property was not impressed

with a constructive trust prior to the commencement of the bankruptcy proceeding."  *Singh v.*

*Att'y Gen. of the United States*, 677 F.3d 503, 516 n.16 (3d Cir. 2012).  The Third Circuit noted

that "[t]he inclusion of fraudulently obtained property in the debtor's estate is not for the debtor's

benefit. … It is designed, instead, to ensure equal treatment of creditors, each of whom has

suffered disappointed expectations at the hands of the debtor." *Id.* (internal quotation marks and citation omitted). The court approvingly cited *XL/Datacomp v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994), in which the Sixth Circuit reasoned that "[c]onstructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor," *id.* at 1452.

48. Here, the Plaintiffs do not allege that the Owlwood Property, the proceeds thereof, or the Underlying Loan Documents were impressed with a constructive trust prior to the petition date. Indeed, the Complaint requests that **this** Court impose a postpetition constructive trust. The Plaintiffs' belated attempt to take from the estate at the expense of other creditors who have similarly "suffered disappointed expectations at the hands of the [Debtors]," *Omegas*, 16 F.3d at 1452, necessarily fails under the Third Circuit's decision in *Singh*.

49. Even if *Singh* did not bar the constructive trust remedy as a matter of law (it does), the claim is nevertheless futile for the independent reason that the Plaintiffs' unrecorded constructive trust is subject to avoidance under section 544(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). Section 544(a) provides, in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
> >
> > \*       \*       \*
> >
> > (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to

> be perfected, that obtains the status of a bona fide purchaser and
> has perfected such transfer at the time of the commencement of the
> case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

50.     The Plaintiffs do not allege that they recorded their alleged constructive trust over

the Owlwood Property.  Accordingly, even assuming that the Plaintiffs could plausibly allege a

constructive trust over the property (they cannot), such interest is avoidable under section

544(a)(3), as a bona fide purchaser of the Owlwood Property would take the property free and

clear of such unrecorded interest under California law.  *See In re Tleel*, 876 F.2d 769, 771-72

(9th Cir. 1989) ("Even if it is assumed that Chbat's interest could qualify for a constructive trust,

the Trustee, as a bona fide purchaser of the Property, had no actual or constructive notice of

Chbat's alleged interest under California law.  Therefore, the Trustee could take priority over

Chbat's [constructive trust] interest."); *Mullins v. Burtch (In re Paul J. Paradise & Assocs.)*, 249

B.R. 360, 372 (D. Del. 2000) ("Therefore, because § 544(a)(3) provides the Trustee with the

rights and powers of a bona fide purchaser, the Trustee holds Lot 33 for the benefit of the estate,

free from any asserted constructive trust interest of Mullins.").  Accordingly, the Owlwood

Property is property of the estate and is not subject to any constructive trust in favor of the

Plaintiffs.

51.     Similarly, even if the Complaint could be construed to assert a constructive trust

over the Underlying Loan Documents (it does not), that interest is avoidable under section

544(a)(1) because the Plaintiffs did not file UCC-1 financing statements to perfect such interest,

and under the law of either California or Delaware, a hypothetical judicial lien creditor would

prevail over the Plaintiffs' unrecorded equitable interest.  *See, e.g.*, *Wallace v. Bonner (In re*

*Bonner)*, 2014 Bankr. LEXIS 896, at *17-18 (B.A.P. 9th Cir. Mar. 6, 2014) (applying California

law and concluding that "[e]ven if Wallace was entitled to an equitable lien [in equipment and

01:23331851.2

25

accounts receivable] and was granted one by the bankruptcy court, it would still be subordinate to [the trustee's] interest as a hypothetical judgment lien creditor and avoidable"); *In re Charlton*, 389 B.R. 97, 104 (Bankr. N.D. Cal. 2008) ("Under California law, the rights of a judgment lien creditor are superior to those of a party that later obtains an order retroactively imposing a constructive trust."); DEL. CODE ANN. tit. 6, § 9-317(a)(2) (unperfected security interest is subordinate to the rights of a judicial lien creditor).

### b.    The Equitable Lien Claim is Not Viable in Bankruptcy

52.    Like constructive trusts, equitable liens "are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor." *Omegas*, 16 F.3d at 1452.  Accordingly, under *Singh*, even if the Owlwood Property or its proceeds were "fraudulently obtained," such property is nevertheless property of the estate, unencumbered by any alleged equitable lien that was not "impressed . . . prior to the commencement of the bankruptcy proceeding." *Singh*, 677 F.3d at 516 n.16. Because the Plaintiffs do not and cannot allege that they obtained a judgment impressing an equitable lien prior to the Debtors' petition date, Count III fails as a matter of law under *Singh*.

53.    Moreover, the Plaintiffs do not allege that they recorded their alleged equitable liens in the real property records.  Thus, even if *Singh* did not bar the remedy (it does) and even if the Plaintiffs were able to satisfy the standard for imposition of an equitable lien on the Owlwood Property under state law (they are not), any such lien would be avoidable under Bankruptcy Code section 544(a)(3), for the reasons set forth above in the discussion of constructive trusts.  *See Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir. 1994) (holding that an equitable lien on real property is avoidable under section 544(a)(3) if, under applicable state law, a bona fide purchaser would take free and clear of unrecorded equitable lien interest); *First Fidelity Thrift & Loan Ass'n v. Alliance Bank*, 71 Cal. Rptr. 2d 295,

300 (1998) (good faith encumbrancer for value who first records takes interest free and clear of unrecorded interests (citing CAL. CIV. CODE § 1214)); *Sywilok v. IRS (In re Gianninoto)*, 539 B.R. 452, 462 (Bankr. D.N.J. 2015) ("Count Two, which seeks to create an equitable lien in favor of Chase, is dismissed, as even if an equitable lien were created it would not withstand the trustee's avoidance powers under § 544(a).").

54.     Nor could any equitable lien in the Underlying Loan Documents (to the extent Plaintiffs even assert one) withstand avoidance under section 544(a)(1) because the Plaintiffs did not file UCC-1 financing statements to perfect such interest.  As noted above in the discussion of constructive trusts, a hypothetical judicial lien creditor would prevail over the Plaintiffs' unrecorded equitable interest in the Underlying Loan Documents under the law of either California or Delaware.  *See, e.g.*, *Bonner*, 2014 Bankr. LEXIS 896, at *17-18 (applying California law and concluding that "[e]ven if Wallace was entitled to an equitable lien [in equipment and accounts receivable] and was granted one by the bankruptcy court, it would still be subordinate to [the trustee's] interest as a hypothetical judgment lien creditor and avoidable"); *In re Charlton*, 389 B.R. at 104; DEL. CODE ANN. tit. 6, § 9-317(a)(2) (unperfected security interest is subordinate to the rights of a judicial lien creditor).

55.     Further, numerous bankruptcy courts have declined to impose the equitable remedy of an equitable lien where the creditor seeking such lien "could have insisted on the receipt of a signed financing statement as a condition to advancing the debtor funds."  *Webster v. Lazin (In re Millennium Prods., Inc.)*, 2002 Bankr. LEXIS 621, at *10 (Bankr. D.D.C. June 11, 2002) (citing *Small v. Beverly Bank*, 936 F.2d 945, 950 (7th Cir. 1991); *In re Einoder*, 55 B.R. 319, 328 (Bankr. N.D. Ill. 1985)).  Here, too, the Plaintiffs could have perfected their alleged security interest in the Underlying Loan Documents by filing financing statements with the

Delaware Secretary of State.  The Plaintiffs' failure to take this simple act precludes them from invoking this Court's equity jurisdiction.  *See, e.g.*, *In re Rettig*, 32 B.R. 523, 524-25 (Bankr. D. Del. 1983) ("The application of the equitable lien doctrine is appropriate only if the creditor has done everything within its power to perfect its lien but is prevented from doing so as the result of debtor's improper behavior.").

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached to the Motion, dismissing the Complaint with prejudice and

granting such other and further relief as may be just and proper under the circumstances.


Dated:    June 18, 2018          */s/ Ian J. Bambrick*_____
          Wilmington, Delaware   YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                 Sean M. Beach (No. 4070)
                                 Edmon L. Morton (No. 3856)
                                 Michael S. Neiburg (No. 5275)
                                 Ian J. Bambrick (No. 5455)
                                 Rodney Square, 1000 North King Street
                                 Wilmington, Delaware 19801
                                 Tel:    (302) 571-6600
                                 Fax:    (302) 571-1253

                                 -and-

                                 KLEE, TUCHIN, BOGDANOFF & STERN LLP
                                 Kenneth N. Klee (*pro hac vice*)
                                 Michael L. Tuchin (*pro hac vice*)
                                 David A. Fidler (*pro hac vice*)
                                 Jonathan M. Weiss (*pro hac vice*)
                                 1999 Avenue of the Stars, 39th Floor
                                 Los Angeles, California 90067

                                 *Counsel to the Debtors and Debtors in Possession*

01:23331851.2

29