## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| LISE DE LA ROCHELLE, *et al.*,<br><br>               Plaintiffs,<br><br>       vs.<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,<br><br>               Defendants. | <br><br><br><br>Adversary Proceeding<br>Case No. 18-50371 (KJC)<br><br><br>**Docket Ref. Nos. 15 & 21** |

## REPLY IN SUPPORT OF DEBTORS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

---

[1]       The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

## **TABLE OF CONTENTS**

**Page(s)**

I.      OVERVIEW ....................................................................................................1

II.     ARGUMENT ...................................................................................................4

     A.      Count I is deficient as Plaintiffs neither contracted for nor ever received
         any interest in the Owlwood Property ....................................................4

     B.      Count II is deficient because Cal. B&P Code § 10233.2 is not incorporated
         into Delaware law via UCC § 9-201 and is not applicable by its own terms ..........5

         1.      UCC § 9-201 does not aid Plaintiffs ............................................5

         2.      Even if Delaware law incorporated California B.& P. Code
             § 10233.2, that statute would not aid Plaintiffs here..................................10

             a.      Fund 3A is not a "broker" .............................................11

             b.      Fund 3A did not undertake to service the Notes in
                 accordance with Cal. B&P Code § 10233 ....................................14

     C.      Plaintiffs' arguments for constructive trust and equitable lien—and with
         them Count III—are meritless ................................................................15

     D.      Plaintiffs' elder abuse claims are improperly asserted in an adversary
         proceeding, untimely and deficient under California law......................................17

         1.      Plaintiffs can pursue an elder abuse claim only via a Proof of
             Claim......................................................................................17

         2.      Plaintiffs' elder abuse claim is late ............................................18

         3.      The Complaint establishes that none of the Plaintiffs qualifies
             under the Elder Abuse Act........................................................18

     E.      Permitting the Plaintiffs to amend would be pointless .........................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*All Points Traders, Inc. v. Barrington Assocs.*,
  259 Cal. Rptr. 780 (Cal. App. 1989) .................................................................................. 11

*In re Almendinger*,
  56 B.R. 97 (Bankr. N.D. Ohio 1985) .................................................................................... 8

*Anderson v. Dep't of Real Estate*,
  155 Cal. Rptr. 307 (Cal. App. 1979) .................................................................................. 11

*Arrow Oil & Gas, Inc. v. J. Aron & Co. (In re SemCrude L.P.)*,
  864 F.3d 280 (3d Cir. 2017) .................................................................................................. 9

*Arrow Oil & Gas, Inc. v. SemCrude, L.P. (In re SemCrude, L.P.)*,
  407 B.R. 112 (Bankr. D. Del. 2009) .................................................................................... 10

*In re Booth*,
  858 F.2d 1051 (5th Cir. 1988) ............................................................................................... 8

*Cypher Chiropractic Ctr. v. Runski (In re Runski)*,
  102 F.3d 744 (4th Cir. 1996) ................................................................................................. 7

*DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham
  Lambert Grp., Inc.)*,
  148 B.R. 993 (S.D.N.Y. 1992) ............................................................................................. 18

*Earl H. Galitz P.A. v. Edghill (In re Edghill)*,
  113 B.R. 783 (Bankr. S.D. Fla. 1990) ................................................................................. 18

*Goldberg v. Bank of Alex Brown (In re Goldberg)*,
  168 B.R. 382 (B.A.P. 9th Cir. 1994) .................................................................................... 16

*Gordon v. Stephenson (In re Stephenson)*,
  166 B.R. 154 (Bankr. S.D. Cal. 1994) ................................................................................. 13

*Healy/Mellon-Stuart Co. v. Coastal Grp., Inc. (In re Coastal Grp., Inc.)*,
  100 B.R. 177 (Bankr. D. Del. 1989) ............................................................................... 17, 18

*McElwee v. Scarff Bros., Inc. (In re McElwee)*,
  469 B.R. 566 (Bankr. M.D. Pa. 2012) ................................................................................... 8

*Mitchell v. Dunn*,
  294 P. 386 (Cal. 1930) ................................................................................................... 15, 16

*In re N. Acres, Inc.,*
    52 B.R. 641 (Bankr. E.D. Mich. 1985) ............................................................4

*Neilson v. Chang (In re First T.D. & Inv., Inc.),*
    253 F.3d 520 (9th Cir. 2001) ......................................................................11

*Neilson v. Dwyer (In re Cedar Funding, Inc.),*
    2011 WL 4048526 (Bankr. N.D. Cal. Sept. 12, 2011) ........................................13

*Noland v. HSBC Auto Fin., Inc. (In re Baine),*
    393 B.R. 561 (Bankr. S.D. Ohio 2008)..........................................................5

*Phillippe v. Shapell Indus.,*
    743 P.2d 1279 (Cal. 1987) ........................................................................15

*Tex. Lottery Comm'n v. First State Bank of Dequeen,*
    325 S.W.3d 628 (Tex. 2010)........................................................................7

*In re Thomas,*
    765 F.2d 926 (9th Cir. 1985) ......................................................................12

## STATUTES

11 U.S.C. § 101(7). ....................................................................................8

11 U.S.C. § 510(b) ....................................................................................18

11 U.S.C. § 544 ........................................................................................5

15 U.S.C. § 1602(h). ..................................................................................8

CAL. BUS. & PROF. CODE § 10012 ................................................................12, 13

CAL. BUS. & PROF. CODE § 10130 ..................................................................11

CAL. BUS. & PROF. CODE § 10131 ................................................................11, 12

CAL. BUS. & PROF. CODE § 10131.1 ..............................................................11, 12

CAL. BUS. & PROF. CODE § 10131.2 ..............................................................11, 12

CAL. BUS. & PROF. CODE § 10131.3 ..............................................................11, 12

CAL. BUS. & PROF. CODE § 10131.7 ..................................................................11

CAL. BUS. & PROF. CODE § 10233 ................................................................14, 15

CAL. BUS. & PROF. CODE § 10233(a) ............................................................14, 15

CAL. BUS. & PROF. CODE § 10233.2 .................................................................................. *passim*

CAL. BUS. & PROF. CODE § 10238(k) ...................................................................................14

CAL. COMM. CODE § 9301(1) ................................................................................................8

DEL. CODE ANN. tit. 6, § 1-201(11) .....................................................................................7

DEL. CODE ANN. tit. 6, § 9-102.............................................................................................8

DEL. CODE ANN. tit. 6, § 9-201.........................................................................................2, 6

DEL. CODE ANN. tit. 6, § 9-301(1) ......................................................................................8

**OTHER AUTHORITIES**

4 WITKIN SUM. CAL. LAW Agency  ....................................................................................11

FED. R. BANKR. P. 7001 ................................................................................................17, 18

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), some or all of which are defendants[2] in the Adversary Proceeding,[3] hereby submit this reply in response to the *Memorandum of Law in Opposition to Debtors' Motion to Dismiss First Amended Complaint for Declaratory Judgment* [Adv. Docket No. 21] ("Opposition" or "Opp.") and in further support of the *Debtors' Motion to Dismiss First Amended Complaint for Declaratory Judgment* [Adv. Docket No. 15] (the "Motion").

## I. OVERVIEW

1.      The Motion and the MOL addressed the Complaint's four counts to explain why each was legally deficient and irremediable.  The Debtors will not repeat those arguments except to summarize them briefly.  What is notable is that, in large part, the Opposition does not respond to them.

2.      In Count I of the Complaint, Plaintiffs contend they have "perfected security interests in real property," specifically "the Owlwood [Property]."[4]  *See* Compl., Count I heading & ¶ 88.  The MOL pointed out that this contention was untenable for several reasons: first, the Plaintiffs' own documents give them at most a lien on, not ownership of, the secured note on the Owlwood Property, MOL ¶¶ 4, 10-14, 20-21; and second, the owner of the Owlwood Property never issued a note or granted security to the Plaintiffs, nor did the holder of the secured Owlwood note (Fund 3A) ever transfer ownership, *i.e.*, negotiate the note and the related security to the Plaintiffs, *id.* ¶¶ 18-19, 22-25.  The Opposition does not address the first infirmity at all. In response to the second, the sole argument mounted is that "[h]ad Sturmer Pippin been left out

---

[2]      Footnote 2 to the *Memorandum of Law in Support of Debtors' Motion to Dismiss First Amended Complaint for Declaratory Judgment* [Adv. Docket No. 16] ("MOL") explains the ambiguity.

[3]      Capitalized terms not specifically defined in this Reply have the same meaning as in the MOL.

[4]      The Complaint and Opposition refer to the relevant real property as the "Owlwood Estate."  This Reply, like the MOL, refers to the "Owlwood Property" given the multiple meanings of the term "estate."

of the bankruptcy, Plaintiffs would have been able to exercise their rights under the Assignment and Collateral Assignment and been able to take possession of the underlying promissory note between Fund 3A and Sturmer Pippin." Opp. ¶ 25. But Sturmer Pippin and Fund 3A *did* file bankruptcy. This Reply expands briefly on this point, as extensive argument is unnecessary.

3.      Count II has been and remains Plaintiffs' central argument. It relies on importing California Business & Professions ("Cal. B&P") Code § 10233.2 (quoted in full at MOL ¶ 31) to carve out an exception to the requirements of the Delaware UCC that perfection of a security interest in a promissory note is dependent on either possession or the filing of a UCC-1. Rather than addressing the extensive arguments set out in the MOL, *see* MOL ¶¶ 27-37 (discussing the inapplicability of the statute in Delaware as well as non-compliance with the California statute), Plaintiffs try to find a magic bullet in UCC § 9-201(b) & (c), *see* Opp. ¶¶ 9-21. But, as discussed below, that section of the UCC does not apply. All it does is provide that the UCC does not override a "rule of law which establishes a different rule for consumers . . . and to any consumer-protection statute or regulation of this State." DEL. CODE ANN. tit. 6, § 9-201(b). The magic bullet fails to hit its mark for multiple reasons, discussed below, the most important being that Cal. B&P Code § 10233.2 is a statute of general applicability (albeit inapplicable here), not a rule applying only to consumers. Additionally, the Opposition's attempt to force the transactions between Plaintiffs and the Debtors into the narrow constraints of the applicable California statute, Opp. ¶¶ 29-45, simply does not work under either the statute's language or the case law interpreting it.

4.      The MOL dealt extensively with Count III, which seeks either a constructive trust on or equitable lien against the Owlwood Property (or maybe Fund 3A's Owlwood note). *See* Compl., Count III heading & ¶ 102. The MOL, with considerable discussion and case citations,

explained why this theory fails under both state and bankruptcy law.  MOL ¶¶ 6, 39-48 (state law), 49-57 (bankruptcy law).  The Opposition spends half a page answering the first argument (state law) by mischaracterizing two cases, while ignoring entirely the bankruptcy issues.  Opp. ¶¶ 46-47.  This Reply addresses the two cases below, again briefly, as it appears Plaintiffs have effectively abandoned this claim.

5.     The Opposition defends Count IV, the elder abuse claim, vociferously, Opp. ¶¶ 48-56, but without addressing the plethora of authority cited in the MOL that points out why the claim is procedurally inapt and substantively deficient.  MOL ¶¶ 59-66 (procedure), 67-72 (substance).  Without repeating the points raised in the MOL, the Reply addresses the elder abuse claim below.

6.     The Opposition ends with a plea for leave to amend apparently on the theory that "[d]iscovery is still open," "[t]here has been no Examiner's report," and because the Noteholders' Committee "opted to enter into a Settlement Agreement."  Opp. ¶ 58.  None of these rationales, nor the traditional one (if given a chance, Plaintiffs could allege facts that cure the infirmities of the first two iterations of the Complaint) suffices.  Plaintiffs' documents are not going to change, so their claims to the Owlwood Property and Fund 3A's note are not going to improve.  The Bar Date is not going to change nor are these Plaintiffs (Florida residents and entities that are not natural persons) going to transform themselves into individual California residents who were over 65 at the time they invested with Debtors.  The Reply thus concludes with the request that the Complaint be dismissed without leave to amend.

## II. ARGUMENT

**A.**   **Count I is deficient as Plaintiffs neither contracted for nor ever received any interest in the Owlwood Property**

7.   As discussed at length in the MOL, the Complaint does not contend Plaintiffs ever dealt with the owner of the Owlwood Property, let alone that they received a note from the property owner or a lien on the property.  Rather the Complaint states:

> 59. The Plaintiffs were noteholders with WMIF 3A in connection with the [Owlwood Property].

> 61. . . . Plaintiffs lent WMIF 3A funds for the stated purpose of funding a secured loan from WMIF 3A to a "third-party borrower" . . . .

> 62. . . . the "third-party borrower" was Sturmer Pippen . . . .

> 65. . . . the Plaintiffs were granted a "security interest in all of WMIF 3A's present and future right, title and interest in [a note secured by a mortgage protected by a title insurance policy on the Owlwood Property].

Compl. ¶¶ 59, 61, 62 & 65.

8.   The documents appended to the Complaint are consistent with the preceding description.  MOL ¶¶ 10-14, 20-21.

9.   The Plaintiffs do not respond to the argument in the MOL that focuses on the Complaint's allegations, the documents and applicable law concerning the necessity of being a holder of a note secured by a mortgage to have a lien against California real property.  MOL ¶¶ 18, 21-23.  Instead, Plaintiffs argue that but for the bankruptcy filing by Sturmer Pippin (really, it is Fund 3A's bankruptcy that impedes them), they could have gone to state court and obtained possession of Fund 3A's note, deed of trust and title policies and "[a]t that point, Plaintiffs would have physically held the note and either received payment from Sturmer Pippin or initiated foreclosure proceedings against the Owlwood estate."  Opp. ¶ 25.  This may be true, but it is also irrelevant.  *In re N. Acres, Inc.*, 52 B.R. 641, 649 n.6 (Bankr. E.D. Mich. 1985)

("Under normal commercial law, a creditor's unperfected security interest is immune from attack by the debtor; it is only when a third party intervenes that the creditor's lack of perfection becomes material. When the debtor files for Chapter 11 relief, an artificial third party, the debtor in possession, is created."); *see also Noland v. HSBC Auto Fin., Inc. (In re Baine)*, 393 B.R. 561, 566 (Bankr. S.D. Ohio 2008) ("Outside of bankruptcy, a lack of perfection would allow a subsequent creditor to obtain a lien having priority over that of the unperfected creditor.  In bankruptcy, a trustee has powers pursuant to § 544 equivalent to such a subsequent creditor or bona fide purchaser without notice which gives a trustee the opportunity to avoid unperfected interests.").

10.     In a cursory and less-than-clear fashion, Plaintiffs also seem to argue that Cal. B&P Code § 10233.2 assists them in establishing a lien on the Owlwood Property.  Opp. ¶ 28. However, as is clear from the MOL, *see* MOL ¶¶ 30-31, that statute would, if applicable (it is not), result in the Plaintiffs having a perfected security interest in Fund 3A's Owlwood promissory note and deed of trust, but it would not make the Plaintiffs the owners of those instruments and thus would not give the Plaintiffs a direct interest in the Owlwood Property. The result is that Count I is incurably deficient and should be dismissed with prejudice.

**B.      Count II is deficient because Cal. B&P Code § 10233.2 is not incorporated into Delaware law via UCC § 9-201 and is not applicable by its own terms**

**1.      UCC § 9-201 does not aid Plaintiffs**

11.     Delaware UCC § 9-201, essentially identical to the version promulgated by the Uniform Law Commission, provides in relevant part as follows:

> § 9-201 General effectiveness of security agreement.
>
> * * *
>
> (b) *Applicable consumer laws and other law.* — A transaction subject to this Article is subject to any applicable rule of law which

establishes a different rule for consumers, to any other statute or regulation of this State that regulates the rates, charges, agreements and practices for loans, credit sales, or other extensions of credit, and to any consumer-protection statute or regulation of this State.

(c) *Other applicable law controls.* — In case of conflict between this Article and a rule of law, statute, or regulation described in subsection (b), the rule of law, statute, or regulation controls. Failure to comply with a statute or regulation described in subsection (b) has only the effect the statute or regulation specifies.

(d) *Further deference to other applicable law.* — This Article does not:

> (1) validate any rate, charge, agreement, or practice that violates a rule of law, statute, or regulation described in subsection (b); or

> (2) extend the application of the rule of law, statute, or regulation to a transaction not otherwise subject to it.

DEL. CODE ANN. tit. 6, § 9-201.

12.     Plaintiffs contend that the effect of section 9-201 is to engraft Cal. B&P Code § 10233.2 into Delaware law, thereby permitting the Plaintiffs to avoid the requirements of UCC §§ 9-312(a) (perfection by filing UCC-1) and 9-313(a) (perfection by possession).  For multiple reasons, that contention is incorrect.

13.     First, by its own terms, section 10233.2 only purports to affect the provisions of ***Divisions*** 3 and 9 of the California Commercial Code.  *See* MOL ¶ 30-31 & n.11.  It does not purport to apply—or in the language of section 9-201(b), it is not an "applicable rule of law"—to the Delaware UCC.

14.     Second, section 10233.2 is not a "rule of law which establishes a different rule for consumers."  Instead, it is a rule of general applicability.  As the Texas Supreme Court held in construing its UCC § 9-201, in the context of a Texas statute that made the last two years of lottery winnings non-assignable (and holding that the UCC trumped that statute):

While the Lottery Act establishes a rule regarding lottery prize assignments different from the provisions in the UCC, *the Lottery Act's rule is not specifically directed at or limited to individuals who enter into a transaction primarily for personal, family, or household purposes. Any purchaser of a lottery ticket, whether an individual or some type of entity such as a partnership, trust, or corporation, purchases the ticket subject to the provisions of the Lottery Act* . . . .  Under the circumstances, we are bound to construe the term "person" to mean what the Legislature defined it to mean, and it is not limited to consumers as defined by the Lottery Act, the UCC, or any other applicable definition of consumer.  Moreover, if section 9.201(b)'s reference to a statute or rule that establishes a different rule for consumers encompasses statutes and rules applying equally to both consumers and non-consumers, as opposed to only consumers, then all conflicting laws or rules that apply to consumers would be subject to the exception, and the exception would swallow the UCC's overarching rule that accounts are assignable.

*But even assuming Irvan's assignment was a consumer transaction, the UCC does not address individual transactions undertaken by consumers.*  It addresses rules of law, statutes, and regulations that apply broadly.  Section 466.410 establishes a rule for all persons, not just individuals involved in Lottery Act transactions primarily for personal, family, or household purposes.  Read in context, we do not believe section 466.410 is a statute or rule of law "that establishes a different rule for consumers" within the meaning of section 9.201(b).

*Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 636-37 (Tex. 2010) (emphasis added).

15.    Third, the Plaintiffs here have not entered into the applicable transactions as consumers within the meaning of the UCC.  DEL. CODE ANN. tit. 6, § 1-201(11) ("'Consumer' means an individual who enters into a transaction primarily for personal, family, or household purposes.").  This was an investment, not the purchase of a car or washing machine.  *See, e.g.*, *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 747 (4th Cir. 1996) ("[C]ourts have concluded uniformly that debt incurred for a business venture or with a profit motive does not fall into the category of debt incurred for 'personal, family, or household purposes.'");

7

*McElwee v. Scarff Bros., Inc. (In re McElwee)*, 469 B.R. 566, 583-84 (Bankr. M.D. Pa. 2012)

("[A] consumer debt is distinguished from a business debt, the latter of which is incurred with a

profit motive."); *see also In re Booth*, 858 F.2d 1051, 1054-55 (5th Cir. 1988) ("Cases decided

under the Truth in Lending Act indicate that when the credit transaction involves a profit motive,

it is outside the definition of consumer credit."); *In re Almendinger*, 56 B.R. 97, 99 (Bankr. N.D.

Ohio 1985) ("The definition of 'consumer' credit transaction under the [Truth in Lending] Act is

markedly similar to the definition of consumer debt under the Bankruptcy Code. *Cf.* 15 U.S.C.

sect. 1602(h) *with* 11 U.S.C. sect. 101(7)."); DEL. CODE ANN. tit. 6, § 9-102(22)-(26) (defining

consumer debtor, consumer goods, consumer goods transaction, consumer obligor and consumer

transaction; none of the definitions applies here).

16.    Finally, acceptance of Plaintiffs' position would be contrary to the UCC as

enacted in both Delaware and California, which both dictate that "[e]xcept as otherwise provided

in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction

governs perfection, the effect of perfection or nonperfection, and the priority of a security

interest in collateral." DEL. CODE ANN. tit. 6, § 9-301(1); *see also* CAL. COMM. CODE § 9301(1)

(same).  MOL ¶ 29 & n.9.  As explained by the Uniform Law Commission in its summary

statement to amended Article 9, adhering to this rule is critical to the functioning of Article 9.

> The 1999 revisions to Article 9 make two fundamental changes
> from old Article 9. In old Article 9, the basic rule chooses the law
> of the state in which the collateral is found as the law that governs
> perfection, effect of perfection, and a creditor's priority. In Revised
> Article 9, the new rule chooses the state that is the location of the
> debtor. Further, if the debtor is an entity created by registration in a
> state, the location of the debtor is the location in which the entity is
> created by registration. If an entity is a corporation, for example,
> the location of the debtor is the state in which the corporate charter
> is filed or registered. In old Article 9, the entity that is a debtor is
> located in the state in which it has its chief executive office. These
> changes in basic choice of law rules will change the place in which

> a financing statement is filed in a great many instances from the place it would have been filed under old Article 9. At the same time, the location of the debtor establishes a more certain place to perfect than the old rule does. Collateral shifts location much easier than the debtors do.

UCC Article 9, Secured Transactions Summary, cmt. 3.[5]

17.    The authorities Plaintiffs cite in support of their argument are unhelpful to them because they are not even remotely on point.

a.        The elder abuse cases (Opp. ¶ 11) are irrelevant to the issue of perfection.

b.        The cases that purport to reject contractual choice of law principles (Opp. ¶¶ 12-13) are inapplicable, as the reason that perfection requirements are controlled by Delaware law is that Delaware's UCC—like California's and all the other states' that have enacted the 1999 version of Article 9—expressly so provides. MOL ¶ 30. The choice of law provisions in the various agreements are irrelevant.

c.        Plaintiffs' reliance upon UCC § 9-301(3)(C) (Opp. ¶¶ 15-16) and the lengthy excursion into general choice of law principles (Opp. ¶¶ 14, 17-21) miss the mark because that statute only provides that "the *effect* of perfection" is governed by local law (emphasis added). The general choice of law discussion is similarly irrelevant because the UCC, as enacted in Delaware and California, has its own choice of law provisions. As explained at length by Judge Ambro in *Arrow Oil & Gas, Inc. v. J. Aron & Co. (In re SemCrude L.P.)*, 864 F.3d 280 (3d Cir. 2017):

> Texas and Kansas, along with every other state, adopted a key feature of revised U.C.C. Article 9: its uniform choice-of-law provision. So even starting with Texas's or Kansas's U.C.C., we

---

[5]        Available at: http://www.uniformlaws.org/ActSummary.aspx?title=UCC%20Article%209,%20Secured%20Transactions%20(1998).

begin with this rule, which states that "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." U.C.C. § 9-301(1).... *The law governing perfection of security interests in both tangible and intangible collateral, whether perfected by filing or automatically, is the law of the jurisdiction of the debtor's location, as determined under Section 9-307.*

. . . SemGroup and its affiliates are registered in Delaware or Oklahoma. U.C.C. § 9-307(e) ("A registered organization that is organized under the law of a State is located in that State."). *Accordingly, the "local law of [Delaware or Oklahoma] governs perfection," not Texas or Kansas law.* U.C.C. § 9-301(1). Oklahoma and Delaware require perfection by filing a financing statement. Okla. Stat. tit. 12A, § 1-9-310; Del. Code tit. 6, § 9-310. Because it is undisputed that the Producers never made such a filing, their interests are unperfected.

*Id.* at 291-92 (internal quotation and grammatical marks omitted; emphasis added).[6]

> **2.      Even if Delaware law incorporated California B.& P. Code § 10233.2, that statute would not aid Plaintiffs here**

18.      Even if Cal. B&P Code § 10233.2 applied, the statute would not cure the Plaintiffs' failure to properly perfect under Article 9, because Plaintiffs have not alleged (and cannot satisfy) at least two necessary elements of that statute. *First*, the statute does not apply because Fund 3A is not a "broker" within the definition set forth therein. *Second*, there is no written servicing agreement whatsoever, much less one that complies with the detailed requirements of Cal. B&P Code § 10233.2. The Opposition either distorts or altogether ignores these fundamental elements of the statute.

---

[6]      The bankruptcy court decision, which *SemCrude* affirmed, explicitly dealt with and rejected the "most significant contacts" choice of law test upon which the Opposition (Opp. ¶¶ 20-21) relies. *Arrow Oil & Gas, Inc. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 112, 133 (Bankr. D. Del. 2009) ("This Court is not free to disregard Article 9's choice of law rules and engage in its own ad hoc assessment of which states have the most significant contacts here.").

a.     **Fund 3A is not a "broker"**

19.     Section 10233.2 applies only where "a broker, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1," has taken all the actions required to bring it within multi-part test set out in section 10233.2.  MOL ¶¶ 31-33 (quoting Cal. B&P Code § 10233.2 and the five-element test set out in *Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 526 (9th Cir. 2001)).

20.     Plaintiffs argue that the threshold broker requirement applies if Fund 3A were *either* a licensed broker *or* engaged in the activities enumerated in sections 10131 and/or 10131.1.  Opp. ¶¶ 30-34.  They are incorrect.  The requirements are cumulative, not "either/or" but "both/and," as a brief excursion into the structure of the relevant provisions of the California Business & Professions Code demonstrates.

21.     Cal. B&P Code §§ 10131 and 10131.1 are found in Chapter 3 of the Business & Professions Code, entitled Real Estate Regulations.  The first section in that Chapter, section 10130, makes it "unlawful for any person to engage in the business of, act in the capacity of, advertise as, or assume to act as a real estate broker . . . without first obtaining a real estate license from the department [of real estate]."  Cal. B&P Code § 10130.  Section 10131 and its progeny, Cal. B&P Code §§ 10131.1-10131.7, then define what activities make someone a real estate broker who must be licensed.  *All Points Traders, Inc. v. Barrington Assocs.*, 259 Cal. Rptr. 780, 785 (Cal. App. 1989) (holding that one engaged in the activities listed in Cal. B&P Code § 10131.3 must be licensed as a real estate broker); *Anderson v. Dep't of Real Estate*, 155 Cal. Rptr. 307, 310 (Cal. App. 1979) (same with respect to Cal. B&P Code § 10131.2); 4 WITKIN SUM. CAL. LAW Agency §§ 51, 55 & 56 (explaining the statutory framework).  The term "also," upon which Plaintiffs focus, Opp. ¶¶ 30,31, 33, has a simple and obvious function.  As explained in *Anderson*, "[i]n 1961, the traditional definition of a real estate broker was broadened."  155

11

Cal. Rptr. at 310.  Focusing specifically on section 10131.1, it mandates that not only must those who sell or lease real estate be licensed real estate brokers, but so ***also*** must someone "who engages as a principal in the business of making loans or buying from, selling to, or exchanging with the public, real property sales contracts or promissory notes secured directly or collaterally by liens on real property."  Cal. B&P Code § 10131.1.[7]

22.     The only case to cite Cal. B&P. Code § 10131.1 is consistent with the preceding interpretation, as are other sections of the Business and Professions Code cited in and the legislative history of section 10233.2.  *In re Thomas*, 765 F.2d 926, 930 (9th Cir. 1985) ("Bus. & Prof. Code § 10131.1 . . . provides that a person who is in the business of selling or exchanging promissory notes to the public is required to be licensed as a real estate broker.");  MOL ¶ 35 n.13 (noting that servicing requirement within section 10233.2 cross-references section 10233 and that section requires that a servicer be a real estate licensee ); Opp. ¶ 29 (quoting the legislative history of section 10233.2, which explains that the section "was introduced to provide an exception to the technical delivery requirement in ***specified broker servicing situations that are in accordance with provisions of the real estate licensing laws***." (emphasis added)).

23.     In sum, to utilize Cal. B&P Code § 10233.2, Plaintiffs would have to demonstrate that Fund 3A was a broker, meaning a licensed broker as specified in Cal. B&P Code § 10012, and that its activities fell within either Cal. B&P Code § 10131 or § 10131.1.  By way of example, if the licensed broker's activities fell within Cal. B&P Code §§ 10131.2 or 10131.3, the Plaintiffs would not be able to utilize section 10233.2.  Or, as relevant here, as Fund 3A was not a licensed broker, section 10233.2 is inapplicable.

---

[7]     And a license would be required ***also*** for activities enumerated in the following sections (10131.2 *et seq.*) of the California Business & Professions Code, as the cited cases make clear.

24.     As discussed in MOL ¶ 35, the only court that has considered this issue reached

the "simple" conclusion that Section 10012 supplies the definition of the term "broker" for

purposes of Section 10233.2, and thus Section 10233.2 applies only to licensed brokers.  *See*

*Neilson v. Dwyer (In re Cedar Funding, Inc.)*, 2011 WL 4048526, at *8 (Bankr. N.D. Cal. Sept.

12, 2011).  The Plaintiffs criticize *Cedar Funding* for looking to Section 10012 for the definition

of "broker," *see* Opp. ¶ 31 n.2, but neither Section 10233.2 nor the structure of the above-

discussed Chapter 3 of the California Business & Professions Code provides any reason to look

elsewhere.

25.     The Plaintiffs' sole authority on the issue whether Fund 3A is a "broker," *Gordon*

*v. Stephenson (In re Stephenson)*, 166 B.R. 154 (Bankr. S.D. Cal. 1994), Opp. ¶ 32, is inapposite.

*Stephenson* is an exception to discharge case in which the defendant invested plaintiff's funds in

a failed real estate project without obtaining plaintiff's consent to the investment.  166 B.R. at

157.  In analyzing whether the plaintiff had "ratified" the investment, the court noted that the

defendant (who was not a licensed broker) had failed to disclose certain material facts that are

required to be disclosed by licensed brokers.  *Id.* at 158.  The court reasoned that since all

material facts were not made available to the plaintiff, plaintiff could not have ratified the

investment, whether or not the defendant was a licensed broker.  *Id.*  Thus, the court was not

required to decide whether the defendant was a "broker" within the meaning of Cal. B&P Code

§ 10233.2 or any other statute.  Moreover, unlike the defendant in *Stephenson*, the Debtors are

not seeking to "escape the consequences of [their] conduct by failing to obtain a license."  Opp.

¶ 32 (quoting *Stephenson*, 166 B.R. at 158 n.4.).  The Debtors are not seeking to "escape" any

liabilities in arguing that the Plaintiffs are unperfected; they are seeking to prevent the Plaintiffs

from taking an outsized and unwarranted share of the total funds available for distribution to innocent investors.

26. All of this confirms what is already obvious from the face of the statute: Section 10233.2 refers to licensed brokers, not unlicensed persons who perform some broker-like functions.

      **b.**     **Fund 3A did not undertake to service the Notes in accordance with Cal. B&P Code § 10233**

27. In order for Cal. B&P Code § 10233.2 to apply, the broker must have "***undertake[n] to service*** the promissory note on behalf of the lender or purchaser ***in accordance with Section 10233***." Cal. B&P Code § 10233.2 (emphasis added). Section 10233 contains myriad detailed requirements for servicers, including, *inter alia*, the existence of a "written servicing agreement." Cal. B&P Code § 10233(a).

28. The Complaint does not allege that Fund 3A "undert[ook] to service the [Notes] in accordance with" any of these requirements. In fact, the Plaintiffs previously acknowledged that they could not satisfy the "servicer" element of Cal. B&P Code § 10233.2. *See* Bankr. Docket No. 1625 at ¶ 8 (acknowledging that "not all the criteria of [Cal. B&P Code §] 10233 were met"); *see also* Opp. ¶¶ 41 (admitting there "was not a separate specified written service agreement") & 36-40 (arguing that Fund 3A performed obligations enumerated in Cal. B&P Code §§ 10238(k)(2) and (4), while omitting any analysis of other relevant subsections, including those requiring a servicer not to commingle payments, to hold them in a trust fund, to provide for independent inspection and to notify lenders promptly of any default, all of which are incorporated by reference into section 10233). Instead, Plaintiffs suggest that there was an "implied-in-fact" servicing agreement between Fund 3A and the Plaintiffs. *See* Opp. ¶¶ 41-43.

29.    Even assuming, *arguendo*, there was an implied-in-fact contract for Fund 3A to service the Notes (there was not), and further assuming that such contract was "in accordance with" the detailed provisions of Section 10233, it would still not help Plaintiffs' case because Section 10233 specifically requires a "***written authorization*** . . . that is included within the terms of a ***written servicing agreement***." Cal. B&P Code § 10233(a) (emphasis added).  Although California law recognizes implied-in-fact contracts as a general matter of contract law, an implied-in-fact contract is precluded where, as here, a statute specifically requires a written agreement. *See, e.g.*, *Phillippe v. Shapell Indus.*, 743 P.2d 1279, 1281-82 (Cal. 1987) (broker's claim for commission pursuant to alleged oral contract precluded by statute requiring broker employment agreements to be in writing).

## C.    Plaintiffs' arguments for constructive trust and equitable lien—and with them Count III—are meritless

30.    The MOL went to considerable lengths to detail the requirements of constructive trusts and equitable liens under California, Delaware and general common law and to detail why Plaintiffs have not met and could not meet those requirements.  MOL ¶¶ 39-48.  The MOL additionally explained why even if the Plaintiffs could surmount the obstacles to a state law claim for either remedy, it would still not survive in bankruptcy.  *Id*. ¶¶ 49-57.  The Plaintiffs address only the first argument and do so with two cases that do not assist them.  Opp. ¶¶ 46-47.[8]

31.    *Mitchell v. Dunn*, 294 P. 386 (Cal. 1930), the first case cited by Plaintiffs, involved the trustee of a trust established for an incompetent adult who commingled her own and trust funds.  *Id.* at 386-87.  At some point, the trustee purchased real property that she

---

[8]       In their two-paragraph argument regarding Count III of the Complaint, the Plaintiffs do not discuss, let alone distinguish, any of the dozen cases relied upon by the Debtors, nor do they contest any of the Debtors' arguments other than the so-called "technicality" that requires them to trace their money to the property that is allegedly subject to the constructive trust or equitable lien.

contended—based on a presumption of law that funds withdrawn from a commingled account are not trust moneys—must be deemed to be purchased with her money and not trust funds. *Id.* at 388. Refusing to apply the presumption to aid the dishonest trustee for the very significant reason that (unlike here) *Mitchell* did not involve the rights of creditors, the Court held:

> We are aware of the rule that a cestui cannot follow trust funds unless he can trace them into the specific property involved. It does not suffice merely to show possession of trust funds by the trustee and the purchase of the property – it is clear that the identity of the funds must be traced. [] However, ***the degree of identification in an action between the cestui and the trustee is far less than in a case where the trustee is insolvent and the rights of creditors are involved.*** [] ***The court [in an earlier decision] very carefully distinguished the cases involving the rights of creditors, and held that a different rule applied in such cases.*** The rule is now settled in this state that when the money of the trustor can be traced into a particular fund, or deposit, though it be mingled with other money, the beneficiary may enforce the trust.

*Id.* at 388-89 (citations omitted; emphasis added).

32.     *Goldberg v. Bank of Alex Brown (In re Goldberg)*, 168 B.R. 382 (B.A.P. 9th Cir. 1994), is consistent with *Mitchell*. In *Goldberg*, the debtor wrongfully retained $17,000 he received by mistake from Bank's predecessor. *Id.* at 383. He deposited the $17,000 into a commingled account and subsequently withdrew $15,000 from the account to purchase a residence, which he claimed as exempt. *Id.* at 385. Goldberg, like the trustee in *Mitchell*, argued that he should prevail over the Bank based on the presumption that a trustee, in withdrawing funds from a commingled account, first takes his own money. *Id.* The *Goldberg* court, like the *Mitchell* court, held the presumption inapplicable and also relaxed the tracing requirement for the same reason as did the *Mitchell* court.

> Franklin Goldberg also argues that in cases of insolvency, the Bank must prove strict tracing, which was not possible according to the bankruptcy court. ***Generally, it is true that where a constructive trust is sought to be imposed against the property of***

> *an insolvent debtor, strict tracing is required.* The purpose of this rule is to treat all creditors equally.  [] However, it is not an abuse of discretion to allow liberal tracing when no creditors will be harmed.
>
> … *Because the commingled funds have been invested in an exempt asset, unsecured creditors would have no claim to the product of the commingled account.*  Under this scenario, rather than protecting all creditors and ensuring pro-rata sharing of assets, Mr. Goldberg would be the sole benefactor of his having commingled the mistakenly issued check funds with his own.

*Id.* (emphasis added).

33.     This case is obviously very different.  Those differences explain why the general tracing rule, discussed at length in the MOL, and bankruptcy policy disfavoring remedies like constructive trusts and equitable liens both require that Count III be dismissed.

**D.     Plaintiffs' elder abuse claims are improperly asserted in an adversary proceeding, untimely and deficient under California law**

**1.     Plaintiffs can pursue an elder abuse claim only via a Proof of Claim**

34.     The MOL details at considerable length, with extensive case and treatise authority, why a creditor cannot use an adversary proceeding to assert a claim against a bankruptcy estate.  MOL ¶¶ 59-61.  The Opposition addresses one of those authorities, Opp. ¶¶ 49-51, ignores the others, and cites a single case to support its argument that the Court should "use its discretion and allow the elder abuse allegations to go forward" even though the Plaintiffs never filed a proof of claim for elder abuse, *id.* at ¶ 51.  The Opposition also quotes Bankruptcy Rule 7001(1) (permitting an adversary proceeding to "recover money or property") and argues it authorizes Plaintiffs to proceed by adversary proceeding rather than proof of claim.  Opp. ¶ 48.

35.     Plaintiffs' paltry Opposition is both insufficient and without merit.  As Judge Balick held almost 30 years ago, a claim may be pursued only via a proof of claim. *Healy/Mellon-Stuart Co. v. Coastal Grp., Inc. (In re Coastal Grp., Inc.)*, 100 B.R. 177, 178

(Bankr. D. Del. 1989).  What was a novel proposition in 1989 is now universally accepted. MOL ¶¶ 59 & 61(citing cases); *see also DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.)*, 148 B.R. 993, 998 (S.D.N.Y. 1992) ("Bankruptcy rule 7001 sets out nine specific categories of controversies that can and should be commenced as adversary proceedings. A claim for damages arising from pre-petition conduct is not one of those categories."); *Earl H. Galitz P.A. v. Edghill (In re Edghill)*, 113 B.R. 783, 784 (Bankr. S.D. Fla. 1990) ("Rule 7001 merely specifies the kinds of relief under the Bankruptcy Code which must be pursued by formal hearing . . . .  Because the creditor's cause of action is predicated on a pre-petition contract claim, this Court finds that the creditor is precluded from recovering damages via this adversary proceeding.").

**2.      Plaintiffs' elder abuse claim is late**

36.      As discussed in the MOL, the Plaintiffs are also late in asserting their elder abuse claim.  MOL ¶¶ 62-66.  Plaintiffs ignore this, but it is fatal to the assertion of this claim in any format.

37.      Finally, it bears mention that even if procedurally and substantively proper (and Count IV of the Complaint is neither), a successful claim for elder abuse would not result in Plaintiffs having a perfected security interest in or liens on any real property or the proceeds from the sale of such real property.  At most—assuming the nexus between the elder abuse claims and the purchase of securities (notes) did not result in subordination under Bankruptcy Code section 510(b)—Plaintiffs would hold general unsecured claims based on elder abuse.

**3.      The Complaint establishes that none of the Plaintiffs qualifies under the Elder Abuse Act**

38.      The MOL adequately details the requirements to be a plaintiff under California's Elder Abuse Act.  Indeed, there is no dispute that a plaintiff must be a natural person, a resident

of California, and age 65 or older at the time of the alleged abuse.  MOL ¶¶ 68-69.  None of the Plaintiffs meets this three-part test.  Indeed, all fail to satisfy the first or second requirement so that the issue that might be cured by amendment—alleging that any of the Plaintiffs was 65 at the time he or she acquired his/her note—never arises.  MOL ¶¶ 71-72.[9]

39.     Count IV, like Counts I, II and II, is hopelessly deficient and should be dismissed without leave to amend.

**E.     Permitting the Plaintiffs to amend would be pointless**

40.     The Complaint has not only gone through two drafts, the Plaintiffs have also had the benefit of seeing the Debtors' arguments repeatedly—in connection with sales and in response to the original complaint.  As noted earlier, the transactional documents are not going to change.  Applicable state law—whether on the requirements of the UCC or the need to trace to establish constructive trust or equitable lien—has long been fixed, as is bankruptcy law on those same issues.  The elder abuse claim fails on too may grounds to be fixed.  The time to end this process is nigh.  The Debtors renew their request that the Complaint be dismissed without leave to amend and with prejudice.

*[Remainder of page intentionally left blank]*

---

[9]     As expressly alleged in the Complaint, each Plaintiff is either (a) an entity, and not a natural person (Provident Trust Group, LLC FBO Arnold L. Berman (Comp. ¶ 3), Provident Trust Group, LLC FBO Nancy E. Kicherer IRA (Comp. ¶ 12), and Jonathan W. Greenleaf and Barbara K. Greenleaf, as Trustees of the Greenleaf Family Trust (Comp. ¶ 16)), (b) a Florida resident, and not a California resident (Lise De La Rochelle (Comp. ¶ 2), Stephen and Zoila Thompson (Comp. ¶ 4), Betty Foster (Comp. ¶ 6), Ruth E. Scott (Comp. ¶ 7), Edna M. Watters (Comp. ¶ 8), Kurt Faudel (Comp. ¶ 10), C. Spencer and Virginia Van Gulick (Comp. ¶ 11), Donald A. and Florence H. Bottaro (Comp. ¶ 13), Laurence Popolizio (Comp. ¶ 14), and Michael Gross (Comp. ¶ 15)), or (c) *both* an entity and a Florida resident (Bernard and Sylvia Fineberg Living Trust (Comp. ¶ 5), and Irene Olin Trust DTD 02/25/1998 (Comp. ¶ 9)).

Respectfully submitted,

Dated:   September 18, 2018
       Wilmington, Delaware

*/s/ Ian J. Bambrick*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Michael S. Neiburg (No. 5275)
Ian J. Bambrick (No. 5455)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

*Counsel to the Debtors and Debtors in Possession*